**UNITED STATES, Appellant,**

v.

**TURNER CONSTRUCTION COMPANY, Appellee.**

No. 86–1175.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1987.

Elizabeth Woodruff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellant. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief was Sherman D. Johnson, Office of the General Counsel, Region IV, Dept. of Health and Human Services, Atlanta, Ga., of counsel.

E.D. Gaskins, Jr., Adams, McCullough & Beard, Raleigh, N.C., argued for appellee. With him on the brief was Charles C. Meeker.

Before DAVIS, Circuit Judge, BENNETT, Senior Circuit Judge, and ARCHER, Circuit Judge.

BENNETT, Senior Circuit Judge.

The government appeals from a final decision of the Armed Services Board of Contract Appeals (ASBCA or board) in *Turner Construction Co.*, ASBCA No. 25714, 86–1 BCA ¶ 18,532 (Oct. 29, 1985), which determined that a certified claim sufficient to confer jurisdiction on the board had been submitted by Turner Construction Company (Turner) and which reinstated the board's prior decision on the merits in *Johnson Controls, Inc.*, ASBCA No. 25714, 82–1 BCA ¶ 15,779 (May 5, 1982), an appeal which had been brought by one of Turner's subcontractors. The prior board decision on the merits had been vacated by this court in *United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed.Cir.1983), a prior appeal involving the same claim, following our holding that the board did not have jurisdiction over a direct appeal by a subcontractor. In this appeal, we hold that the board properly assumed jurisdiction of Turner's appeal and affirm the board's granting of an equitable adjustment to Turner.

## BACKGROUND

As noted above, this is the second trip to this court for the claim involved in the present dispute. The background facts involved in the present appeal are essentially the same as those outlined in our prior opinion and will only be summarized here. On May 24, 1977, the Department of Health, Education, and Welfare (now the Department of Health and Human Services (HHS)) entered into a contract with Turner for services in connection with the construction of a 7–story permanent laboratory facility for the National Institute of Environmental Health Sciences in Research Triangle Park, North Carolina. The contract, No. 141–77–0006, was entitled "Construction Manager Agreement, Construction Manager Services with Guaranteed Maximum Price" and had a guaranteed maximum price of $65,394,000. Turner entered into approximately 74 subcontracts for construction work on the laboratory facility. One of the subcontracts was executed between Turner and Johnson Controls, Inc. (Johnson) for the supply and construction of a centralized control center (CCC) for temperature control of the facility as well as a centralized control for research data acquisition, analysis, and display.

The specifications detailing the CCC were based on a Honeywell system design which required backup redundant hardware to minimize the risk of equipment failure. Prior to bidding, the government indicated in a letter to Johnson that "[t]he specifications are intended to be of the performance type and in no way proprietary." Therefore, Johnson submitted a technical proposal that utilized a sophisticated software-based package which was not based on the Honeywell design, a hardware-oriented system. Turner and HHS determined that Johnson's proposal met the contract specifications and the Johnson proposal was accepted on September 27, 1977, for a subcontract price of $3,421,275. The government approved the award by Turner of the subcontract to Johnson.

In June and July of 1978 Johnson made submittals for the CCC, based upon its technical proposal, which showed four computers. Turner rejected these submittals because, among other reasons, "redundant hardware is not being supplied as specified." Johnson asserted that the redundancy requirement in the bid package was satisfied by its more sophisticated software package without the need for redundant hardware and that redundant hardware was not contemplated by its proposal. In fact, Johnson's technical proposal listed redundant hardware as an option. Nevertheless, Turner and HHS required Johnson to install an additional three computers as redundant hardware and Johnson reserved its right to file a claim for an equitable adjustment in the amount of $221,150.

On May 16, 1980, Johnson certified its claim for $221,150, pursuant to the requirements of the Contract Disputes Act (CDA), 41 U.S.C. § 605(c)(1). On May 19, 1980,

Turner forwarded Johnson's claim to the contracting officer for a decision. As to certification of the claim, Turner stated the following:

> Since the claimant [Johnson] is the real party in interest and is the only one who can logically and realistically certify the claim, Turner hereby submits this certification in satisfaction of the requirements of the Act. Since Turner is not the real party in interest, Turner must accept and rely on the certification at face value. In addition, Turner is not aware of any reason which suggests that Johnson has knowingly or intentionally failed to comply with the requirements of the Act or is acting in bad faith.

On June 9, 1980, the contracting officer notified Turner that its purported certification did not meet the statutory requirements and that the claim would not be considered unless Turner properly certified it.

Under the terms of the prime contract, in its role as construction manager, Turner was required "[w]henever any claim [arose] under or out of any contract awarded in furtherance of [the] project [to] diligently render all assistance which the Government may require, including the furnishing of reports with supporting information necessary to resolve the dispute or defend against the claim, participation in meetings or negotiations with the claimant or its representatives, appearance before the Board of Contract Appeals or court of law, and other assistance as may be appropriate." On July 2, 1980, in accordance with its contractual obligation, Turner submitted a report to the contracting officer on the merits of Johnson's claim recommending its rejection on the grounds that what Johnson was identifying as extra costs beyond contract requirements was within the specified scope of the work. Nevertheless, on August 13, 1980, Turner submitted a certification of the Johnson claim utilizing the exact statutory language contained in 41 U.S.C. § 605(c)(1).

On October 10, 1980, the contracting officer informed Turner that he would be unable to reach a decision on the claim within the 60–day period prescribed by 41 U.S.C. § 605(c)(2) because of the unresolved conflict between Turner's July 2, 1980 recommendation to reject Johnson's claim and Turner's subsequent certification of the same claim on August 13. In a letter also dated October 10, 1980, Turner withdrew its recommendation to reject Johnson's claim, stating that making legal conclusions was beyond its scope of expertise and responsibility and that it was limiting its role to providing a factual and technical report. On November 21, 1980, the contracting officer informed Turner that notwithstanding its disclaimer of its recommendation to reject Johnson's claim, its factual and technical report remained contrary to its statutory certification.

On January 13, 1981, Johnson appealed directly to the ASBCA, noting the failure of the contracting officer to issue a decision on its claim. The board rejected a government motion to dismiss for lack of board jurisdiction on the basis of an invalid certification by Turner, finding that privity of contract existed between Johnson and the government and that Johnson had validly certified the claim as the subcontractor. 82–1 BCA at 78,143. On the merits, the board found that the software-based system without redundant hardware proposed by Johnson met the performance specifications and had been accepted by the government and that Johnson therefore was entitled to an equitable adjustment for its supply of the redundant hardware. *Id.* at 78,144.

On appeal to this court, we determined that the ASBCA did not properly have jurisdiction over a direct appeal brought against the government by the subcontractor Johnson because (1) the subcontractor was not a "contractor" as that term was defined in the Contract Disputes Act, (2) there was no privity of contract between the subcontractor and the government arising from the contract or the doctrine of agency, and (3) a direct appeal was not authorized by either the prime contract or

subcontract involved in the suit. *Johnson Controls*, 713 F.2d at 1548–57. In light of the finding that the board erred in assuming jurisdiction over the subcontractor's appeal, this court declined to reach any other issues raised by the appeal and vacated the board's decision on the merits. We expressly did not rule on or offer comment on the adequacy of Turner's certification since the ASBCA had treated Johnson's claim as a direct subcontractor appeal and did not rely on Turner's certification to establish its jurisdiction. *Id.* at 1545 n. 2 & 1557.

Following our decision in *Johnson Controls*, Johnson moved that the board reinstate its judgment on the merits because Turner had both certified the claim and filed a notice of appeal following the failure of the contracting officer to render a decision within a reasonable time. The government opposed the motion, arguing that the Turner certification was improper and that the claim must be resubmitted to the contracting officer and recertified. The board, relying on its decision in *Turner Construction Co. for and on behalf of Industrotech Constructors, Inc.*, ASBCA No. 25447, 84–1 BCA ¶ 16,996 (Nov. 25, 1983), upheld Turner's certification.[1]

Relying on *Hill v. Western Electric Co.*, 672 F.2d 381 (4th Cir.), *cert. denied*, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982), and *Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir.1953), *cert. denied*, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed.2d 1069 (1954), for the proposition that it can be appropriate under proper circumstances, following the vacation of a judgment for a jurisdictional defect, to reinstate the judgment on the merits once the jurisdictional defect is cured, the board did exactly that. Noting that the government had ample opportunity to defend and ex-

plain its position at the initial hearing and that the government did not suggest a need for further proceedings, the board reinstated its prior decision on the merits, finding that jurisdiction had been present at the time of its initial decision, even though not explicitly discussed or relied on in the accompanying opinion. 86–1 BCA at 93,092. The government then filed the present appeal to this court.

## OPINION

### I.

The importance of the certification requirement[2] to the operation of the CDA was made clear by Congress, as discussed by the Court of Claims:

> An important objective of Congress was to "discourag[e] the submission of unwarranted contractor claims." S.Rep. No. 1118, 95th Cong., 2d Sess. 5, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5235, 5239. One method of accomplishing this purpose was provided in section 5 of the Act, 41 U.S.C. § 604, which makes a contractor liable for the amount of any portion of its claim that it is unable to support because of misrepresentation or fraud. Another was the certification requirement.

*Paul E. Lehman, Inc. v. United States*, 673 F.2d 352, 354, 230 Ct.Cl. 11 (1982) (determining that certification was necessary for there to be a valid claim and as a jurisdictional prerequisite to a direct challenge of a contracting officer's decision). It has never been doubted that certification was required for the present claim for an equitable adjustment of $221,150 by the government. However, considerable doubt has clouded the issues regarding the prop-

---

1. The *Industrotech* opinion discussed here is a subsequent proceeding to the unpublished *Industrotech* opinion discussed in *Johnson Controls. See* 713 F.2d at 1545 & nn. 3 & 4. For a discussion of the later *Industrotech* opinion, see *infra* note 3.

2. 41 U.S.C. § 605(c)(1) provides, in pertinent part:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

er party to certify and whether the executed certification was effective to confer jurisdiction on the board.

Much of the confusion in this case stems from the terms of the prime contract, which was entered into prior to the enactment of the CDA, and the interplay of the requirements of the CDA, under which Turner elected to treat the claim as arising. *See W.M. Schlosser Co. v. United States,* 705 F.2d 1336 (Fed.Cir.1983) (where contract was entered into prior to effective date of CDA, contractor had choice of proceeding under either the CDA or the disputes clause of the contract). In the *Johnson Controls* case, this court determined that prime contractor Turner rather than subcontractor Johnson was the proper party to certify this claim. 713 F.2d at 1556–57; *see also Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813–14 (Fed. Cir.1984). But, as we noted in *Johnson Controls,* since Turner is required under the terms of the prime contract to render all assistance which the government may require to resolve disputes or defend claims arising under or from the contract, compliance with the terms of the contract produces "a strange result" where Turner sponsors a subcontractor claim under the CDA. 713 F.2d at 1556.

As a result of the terms of the contract and the provisions of the CDA, Turner found itself in an unexpected, confusing, and potentially conflicting position with respect to its subcontractors and the administration of its duties toward the government under the contract. In practical effect, Turner found itself in the position of having to review and certify the data and legal theories underlying the subcontractor's claims while also providing the data and basis for the government's defense of the same claims. We believe that Turner's actions under the facts of this case more than represent a good faith effort to balance and comply with the competing concerns confronting it.

Given the nature of this court's day-to-day business, we do not find it at all sur-

prising for there to be at least facially proper grounds factually and legally supporting each side in a nonfrivolous dispute. Nor do we find hopelessly irreconcilable the awkward requirement that the prime contractor both certify the ·claims of its subcontractors and provide the government with facts and theories with which to defend those claims. In fact, this accords with the government's argument that the contractor is now required under the CDA "to disclose any facts which would undermine [its] claims." *See Contract Disputes Act of 1978: Joint Hearings on S. 2292, S. 2787 & S. 3178 Before the Subcommittee on Federal Spending Practices and Open Government of the Senate Committee on Governmental Affairs and the Subcommittee on Citizens and Shareholders Rights and Remedies of the Senate Committee on the Judiciary,* 95th Cong., 2d Sess. 21, (1978) (testimony of Admiral Hyman G. Rickover). However, we believe that the resolution of the alternative arguments presented in a claim arising out of a government contract is properly made in accordance with the provisions of the CDA, and should not be the responsibility of the prime contractor as a prerequisite to certification of its subcontractor's claim.

As described above, Turner had certified the Johnson claim on August 13, 1980, in accordance with the statutory language of section 605(c)(1), but had done so after having previously submitted a report to the government on the merits of Johnson's claim on July 2, 1980, which recommended rejection of the claim. The government argues that Turner's prior recommendation to the government that the Johnson claim be rejected is in direct conflict with its subsequent certification that Turner believed the Government was liable for the amount of the claim and that since Turner did not reconcile the inconsistency, its certification is therefore qualified and invalid.

■ To be effective to create a valid claim under the CDA, a certification by a contractor cannot be qualified. *See, e.g., Cox Construction Co. and Haehn*

*Management Co., a Joint Venture,* ASBCA No. 31072–150, 85–3 BCA ¶ 18,507; *Sierra Blanca, Inc.,* ASBCA No. 30910, 85–3 BCA ¶ 18,440. In *W.H. Moseley Co. v. United States,* 677 F.2d 850, 852, 230 Ct.Cl. 405, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982), this court held that proper certification of a claim requires that the contractor "make a statement which simultaneously makes all of the ʲ assertions required by 41 U.S.C. § 605(c)(1)." More importantly, the court in *W.H. Moseley* also held that the determination of the adequacy of the certification is not a matter to be left to the contracting officer's discretion. 677 F.2d at 852; *cf. Lehman,* 673 F.2d at 356 (contracting officer has no authority to waive a requirement imposed by Congress).

■ This court and the Claims Court have consistently held that certifications which are invalid must be resubmitted in accordance with the terms of 41 U.S.C. § 605(c)(1) in order to create a valid claim. *Schlosser,* 705 F.2d at 1340; *Skelly and Loy v. United States,* 685 F.2d 414, 419, 231 Ct.Cl. 370 (1982). There are numerous cases which have held a contractor's certification to be ineffective due to a failure by the contractor to comply with an explicit statutory requirement with respect to when, how, or with whom the certification must be filed. *See, e.g., J.M.T. Machine Co. v. United States,* 826 F.2d 1042 (Fed. Cir.1987) (rejecting submissions to attorney or board instead of to contracting officer); *Thoen v. United States,* 765 F.2d 1110 (Fed.Cir.1985) (sending certified copy of Claims Court complaint to contracting officer not sufficient); *Skelly and Loy,* 685 F.2d 414 (rejecting combination of oral and written statements submitted piecemeal as certification); *T.J.D. Services, Inc. v. United States,* 6 Cl.Ct. 257 (1984) (rejecting letter claim signed by attorney instead of contractor); *Palmer & Sicard, Inc. v. United States,* 4 Cl.Ct. 420 (1984) (omission of assertion that claim made in "good faith"). Here, no such failure occurred. If, as noted in *W.H. Moseley,* the determination of the adequacy of the certification is not to be left to the contracting officer's discretion, we can see no reason why the prohibition against use of such discretion does not apply with equal force to attempts by the contracting officer to discredit certifications submitted in exact compliance with the statutory requirements imposed by Congress.

As noted above, the board in this case rejected, on the basis of its prior decision in *Industrotech,* the government's assertion that Turner's certification was invalid, finding the facts of the present case to be "substantially identical" and the prior reasoning to apply "with full force." *Industrotech* was an appeal involving a different subcontractor but arising out of the same prime construction contract and similar contract provisions as in the present case.[3] The government argues that the board's analysis in *Industrotech,* and therefore its analysis in this case, is fatally flawed in that the board disregarded the importance of the certification requirement by requiring nothing more of the prime contractor

3. In *Industrotech,* Turner had submitted an analysis of the subcontractor's claim to the government after having certified the claim to the government, cert and the board upheld the certification. The board there noted that in the usual government contract, the prime contractor was not required to assist in the government's defense of claims against it nor must the prime wholly agree with every part of a claim in order to submit a subcontractor claim to the government. 84–1 BCA at 84,662. The board in *Industrotech* then held that "[t]he contractor is only required to believe at a minimum that there is good ground to support the subcontractor's claim. Good ground does not mean that the prime contractor must consider the claim certain; it merely means that the claim is made in good faith and is not frivolous or a sham." *Id.* In the opinion of the board, a contrary result would have resulted in a prime contractor's being able to certify only those portions of a subcontractor's claim with which it was in total agreement, thereby depriving the board of jurisdiction on the remaining portions and requiring the contractor to seek recovery in a state court. Such multiple litigation would be wasteful and unnecessary and would violate the purpose of the CDA to provide for the resolution of disputes and claims related to government contracts. *Id.*

than what existed prior to the enactment of the CDA.

We do not agree. In its attempt to reduce meritless claims under the CDA, Congress specified the assertions that contractors were to certify to before filing a claim and provided for recovery of damages and costs where the contractor misrepresents facts or commits fraud. *See* 41 U.S.C. § 604. In light of that provision, contractors should not be presumed to attest to the required assertions lightly. Congress itself believed this to be especially true where prime contractors review and sponsor claims of subcontractors. *See* S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5235, 5250 ("The single point of contact approach also helps suppress frivolous claims. If direct access were allowed to ... subcontractors, contracting officers might ... be presented with numerous frivolous claims that the prime contractor would not have sponsored.").

The government further argues, however, that the certification must not only be submitted in good faith but must reflect the prime contractor's own belief that the submitted claim reflects the amount owed by the government and that to allow the prime to substitute the subcontractor's belief for its own in making a certification would make a sham of the certification requirement, regardless of the merits of the submitted claim, and would render meaningless the prohibition against direct appeals by subcontractors. Under the facts of the present case, we do not find this argument persuasive.

As explained by Turner in its October 10, 1980 letter to the board, its recommendation to deny the claim was beyond its expertise and was the result of an erroneous view of what was required of it under the terms of the contract. We agree that the recommendation as to the ultimate resolution of the claim was beyond its proper role. We further agree with the board in *Industrotech* that the certification requirement requires not that the prime contractor believe the subcontractor's claim to be certain, but that the prime contractor believe that there is good ground for the claim. *Cf.* S.Rep. No. 1118, *supra,* 1978 U.S.Code Cong. & Admin.News 5235 at 5254 ("To the extent that contractors set forth claim items and costs on which they can submit a legitimate argument for recovery, [41 U.S.C. § 604] would not apply."). Thus, how the prime contractor itself would resolve the dispute should not be relevant to the certification issue; the prime contractor should not, through the requirement that it certify subcontractor claims, be used as a substitute for the contracting officer or the board in the determination of the merits of the submitted claims under the CDA.

The government does not dispute that Turner's certification of August 13, 1980, simultaneously encompassed all of the statutory elements needed for certification. It was unequivocal and replaced the ineffective qualified certification submitted by Turner on May 19, 1980. To require more by allowing the contracting officer the discretion to look beyond certification language which complies with the statute would necessarily require an examination of the underlying basis and merits of the claim in order to determine the validity of the certification. Since a proper certification is a precursor to jurisdiction under the CDA, invalidating certifications as a result of such examinations would prevent the contracting officer, the board, or this court from employing the provisions of the CDA on any aspect of the claim. This is contrary to the overall goal of Congress that the CDA be used to resolve all disputes and claims arising from contracts with government agencies and would also render section 604 virtually useless as a means to prevent unwarranted claims. This is not what Congress intended. *See Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) (a statute should be interpreted so as not to render one part inoperative); *Horner v. Merit Systems Protection Board,* 815 F.2d 668, 674 (Fed. Cir.1987). While certification is indeed "one of the most significant provisions of

the CDA," *Fidelity Construction Co. v. United States*, 700 F.2d 1379, 1384 (Fed. Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983), it is only one method of preventing unwarranted claims under the CDA; it was not designed to be nor is it the exclusive method. *See Lehman*, 677 F.2d at 354. In light of the preceding discussion, we hold that Turner's certification of August 13, 1980, complied with the requirements of the CDA and was sufficient to confer jurisdiction on the board to hear the merits of Turner's claim.

## II.

Since the government does not dispute that Turner's appeal was timely filed and having found that Turner properly certified its claim, we now address the merits of the claim. The bid package for the CCC, although based on a Honeywell system design which included backup redundant hardware, upon Johnson's inquiry to the government at a pre-bid conference, was confirmed to contain performance type specifications. Johnson therefore submitted a technical proposal which did not employ redundant hardware, but utilized software features to meet the performance requirements of the specifications. The board concluded that Johnson's technical proposal contained no ambiguity with respect to the redundant hardware because the difference between the proposed approach and the specifications was not difficult to discern, because it was clear that Johnson was proposing to use only four computers, and because the proposal clearly offered redundant hardware only as an extra. 82-1 BCA at 78,143-44. Thus, in light of the fact that the government evaluated the proposal for 5 months (from Johnson's bid on April 21, 1977 to Turner's award to Johnson on September 27, 1977) without inquiring as to any ambiguity or as to the proposal's overall adequacy, the board held that the government accepted the system as proposed when Turner awarded the subcontract to Johnson and that the subsequent supply of redundant

hardware, as required by Turner on behalf of the government, entitled Johnson to an equitable adjustment. *Id.* at 78,144.

■ The government challenges each of the above findings. Under the CDA, we can only set aside a decision on a question of fact if the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or is not supported by substantial evidence. 41 U.S.C. § 609(b). In this case, we review the board's findings of fact to determine if they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *see also Koppers Co. v. United States*, 405 F.2d 554, 559, 186 Ct.Cl. 142 (1968). Thus, in order to prevail on the merits of this appeal, the government must show that the system as proposed did not satisfy the contract performance specifications and that substantial evidence does not support the board's findings that the differences between the Honeywell design and the proposed system were not difficult to discern.

In support of its argument that the differences in Johnson's approach and number of computers were difficult to discern, the government points to evidence to demonstrate that the proposal was extremely imprecise and capable of being interpreted to provide redundant hardware. The government further argues that the drawings accompanying the proposal were insufficient to depict the hardware proposed or to count the components proposed. In contrast, Turner points to other evidence to demonstrate that the proposal does not describe or show redundant hardware, that its illustrations show only four computers, and that it only lists redundant hardware as an optional extra. In accordance with our standard of review, even if the record con-

tains some evidence which supports a contrary position, we will not alter a board's finding if substantial evidence supports it. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 814 (Fed.Cir.1984); *Koppers,* 405 F.2d at 559. Upon careful attention to the record, we conclude that there is substantial evidence to support the board's findings that Johnson's proposal was not ambiguous and was sufficient to put the government on notice of the differences in approach of which it now complains.

■ The government also argues that Johnson failed to set forth specifically its proposed deviation from the specifications—the elimination of the redundant hardware—so as to prevent the contracting officer from being able to determine its adequacy. The specifications required that "alternative techniques ... to any aspect of the specifications shall be submitted at the time of the bid." There is no dispute that Johnson's proposal utilized a design based on software that did not use redundant hardware as employed in the Honeywell system, but both parties agree that the project specifications for the CCC were of the performance type instead of the design type. *See J.L. Simmons Co. v. United States,* 412 F.2d 1360, 188 Ct.Cl. 684 (1969) (performance type specifications set forth an objective or standard to be achieved and the successful bidder is expected to exercise his ingenuity in achieving that objective).

Therefore, the government's argument is more effectively directed to challenging the board's conclusion that the proposed system satisfied the performance specifications based on the Honeywell design contained in the bid package. But the government's arguments focus solely on the contractor's alleged failure to outline the alleged deviations in the proposal, and appear to assume that the absence of redundant hardware signifies, without more, that the proposed system does not comply with the specifications. However, the board found otherwise and we have been provided no valid basis upon which to disagree with that conclusion. Thus, since the performance required by the specifications was met by the proposed system without redundant hardware and since the proposal listed the redundant hardware as an optional extra, the failure by Johnson to delineate that redundant hardware was not part of its proposal does not preclude an equitable adjustment when such hardware was subsequently provided at the government's request.

■ The government does argue that the board should not have even reached the question of whether the proposed system was the equivalent of the Honeywell system. It argues first that the board should have confined itself to the issue of whether the contracting officer abused his discretion in not accepting the proposed system as an equal. However, the board determined that since for many months the government had not raised any questions or objections concerning the contents or adequacy of the proposal, the government had accepted the proposed system as an equal at the time that it approved Turner's award of the subcontract to Johnson. Therefore, any argument based upon a rejection of the proposal by the contracting officer subsequent to the day that the subcontract was awarded must also fail.

Finally, the government argues that the contractor should not have been allowed to present evidence to the board on whether its system was an equal when the evidence was not submitted to the contracting officer at the time of the proposal. However, this is merely a recasting of the arguments found unpersuasive above. To the extent it represents another challenge to the validity of Turner's certification, it is also rejected. Thus, upon a careful examination of the record and all of the parties' arguments, we cannot conclude that the government has met its burden of showing that substantial evidence does not support the board's findings underlying its conclusion that the proposed system met the performance specifications contained in the bid package.

AFFIRMED.