**In the Matter of COMMONWEALTH ELECTRIC COMPANY, Debtor.**

**COMMONWEALTH ELECTRIC COMPANY, a corporation operating as debtor-in-possession, Plaintiff,**

**v.**

**ISYS SECURITIES SYSTEMS, INC., a corporation, Defendant.**

**Bankruptcy Nos. BK87–2457, A88–0286.**

United States Bankruptcy Court,
D. Nebraska.

May 21, 1990.

---

Edward Tricker, James Overcash, Woods & Aiken, Lincoln, Neb., for plaintiff.

William Hadley, Bradley White, Andersen, Berkshire, Lauritsen, Brower & Hadley, Omaha, Neb., for defendant.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Trial of this adversary proceeding was held on November 14 and 15, 1989. Edward Tricker and James Overcash of Woods & Aiken located in Lincoln, Nebraska, appeared on behalf of the plaintiff. William Hadley and Bradley White of Andersen, Berkshire, Lauritsen, Brower & Hadley located in Omaha, Nebraska, appeared on behalf of defendant. Following trial, the Court requested post-trial written arguments and final briefs, the last of which was received on January 4, 1990. This memorandum contains the findings of fact and conclusions of law required by Fed.R.Civ.P. 52 and Fed.Bankr.R. 7052. This complaint which was brought as a request for turnover of property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (O).

### Background

Commonwealth Electric Company (Commonwealth) has been a debtor-in-possession under Chapter 11 of the Bankruptcy Code since August, 1987. Several years prior to that, Commonwealth entered into a subcontract arrangement with the defendant, ISYS Securities Systems, Inc. (ISYS). By virtue of the subcontract arrangement, ISYS had a construction contract with the United States Government to complete certain projects on the Consolidated Space Operation Center ("CSOC" or "project") which was located near Colorado Springs, Colorado. Commonwealth was to perform certain installation functions pursuant to its subcontract with ISYS.

In late June of 1987, Commonwealth was unable to continue its business operations and terminated its participation in the project after a significant amount of work had been completed. As a result of Commonwealth's inability to complete the project, ISYS was required to complete it in order to be in compliance with its contract with the Government. The dispute in Count I of the complaint concerns the amount due Commonwealth for the work it completed but had not received payment for as of the date of its work termination and the offset, if any, in favor of ISYS for the costs incurred by ISYS in completing the project.

The second count concerns an interpretation of the rights of the parties pursuant to the subcontract. During the work on the project, Commonwealth incurred certain additional costs as a result of delays by the Government. The contract between the Government and ISYS provides that any claim for additional cost caused by the Government to the contractor is subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (Contract Disputes Act). As will be discussed later, that Act apparently requires certification of the costs and the cause of such costs by the contractor and submission to the Government for a determination by contract administration officers or an administrative panel. No action is permitted to be brought on the claim as between the contractor and the Government in the courts of the United States, at least until the full administrative process has been completed.

The subcontract between ISYS and Commonwealth states that disputes between the subcontractor and the contractor are also subject to the Contract Disputes Act. The issue is whether or not Commonwealth must submit its additional costs to ISYS, and then await Government determination of the allowance of the costs or may Commonwealth, as a result of language or lack of specific language in the subcontract look directly to ISYS for the additional costs whether or not the Government allows ISYS an increase in the contract amounts resulting from such additional costs?

The parties have agreed that the Court may interpret the contract language and declare the rights of the parties under the subcontract. If the Court determines that Commonwealth has a right to proceed directly against ISYS, it must then be determined whether or not there is sufficient evidence to permit judgment to be entered in favor of Commonwealth and against ISYS or whether further trial must be had on the damage issue.

## Count I. Turnover.

 Commonwealth, by leaving the project and terminating its work at the end of June, 1987, breached its contractual obligation to complete the project. At the time of the breach, it had billed ISYS for $3,437,417.65 for work done on the project. Commonwealth had received $3,203,169.62. This left a balance of $234,248.03 for invoiced amounts. In the pretrial statement, Filing No. 15, at Paragraph III.8., "uncontroverted facts," ISYS admits, without considering any offsets, that Commonwealth is still owed $225,957.00 for work under the contract. Commonwealth believes that the amount owed under the contract is $234,248.03. ISYS spends a substantial amount of time in its final argument and brief urging the Court to find that Commonwealth has presented insufficient evidence to support the $225,957.00 amount and, therefore, the Court should find that Commonwealth has failed to meet its burden of proof and is owed nothing for the work performed prior to the breach of the contract. However, the Court believes ISYS misunderstands the purpose of the pretrial statement. That statement contained the position of the parties with regard to controverted and uncontroverted facts. The admission by ISYS in the summary of uncontroverted facts eliminates the need for Commonwealth to present any evidence on its allegation that prior to the breach it performed work on the contract and was due at least $225,957.00 for such work. Had ISYS simply admitted that it had been billed a specific amount, such an admission would not have permitted Commonwealth to stand on the admission, but Commonwealth would have been required to present evidence of the completion of the work which resulted in its claim of at least $225,957.00.

From testimony of Mr. Cerretto, a witness for ISYS, the Court finds as a fact that the project was completed, as far as Commonwealth's subcontract is concerned, in February, 1988. ISYS now claims it owes Commonwealth nothing because Commonwealth did not complete the contract. However, the contract work was eventually completed and ISYS admitted an amount due for work completed prior to Commonwealth's breach. ISYS has a claim of offset which will be treated in this opinion.

This Court finds as a fact, based upon the admission in the pretrial statement, that ISYS owes Commonwealth as of August 8, 1987, the bankruptcy petition date, $225,957.00.

 Commonwealth claims to be owed an additional $8,291.03 based upon its billings to ISYS as of the date of the breach. The only evidence Commonwealth presented concerning the additional monies owed was the testimony of Thomas Shea, former general counsel for Commonwealth, and Exhibits 1 and 2. Mr. Shea testified that in his investigation of the project, he discussed its status with Mr. Steve Trutna, formerly an employee of Commonwealth but, following the breach, an employee of ISYS. The questions and answers concerning the matter are contained on page 71 of the transcript of the trial and are as follows:

Q. Alright, what did Mr. Trutna say to you insofar as what the balance of the work was to complete the Commonwealth subcontract?

A. There were some various items of work, I cannot remember in specific at this time, the specific items, but he talked about the scope of what was left to complete.

Q. And what did he say in relationship to that scope?

A. He talked about the items that he had and was working for ISYS to complete at that time.

Q. Did he indicate what those items were?

A. Yes. He talked to me about what the items were.

Q. Alright. At the time that Commonwealth terminated its performance out there, what percent of the contract amount had been actually invoiced or billed to ISYS?

A. Ninety-nine percent.

Mr. Shea did not testify that ninety-nine percent of the work was completed. His testimony is that ninety-nine percent of the

contract amount had been invoiced or billed to ISYS. Therefore, his testimony is not evidence of contract completion to the extent of ninety-nine percent of the contract requirements.

Exhibit 1 is an accounting record identified by Mr. Shea as Commonwealth's record of billings and payments, upon which he based his claim that Commonwealth is owed an additional $8,291.03. Exhibit 2 is a summary of Exhibit 1 prepared by Mr. Shea which shows dates of invoicing amounts, retainages, payments and pay dates.

There was no other evidence offered in support of Commonwealth's claim that it had completed work pursuant to the terms of the contract as of the date of breach in an amount which would substantiate that ISYS owed Commonwealth as of the breach any more than the amount it has admitted, $225,957.00.

Commonwealth had the opportunity to either depose or present at trial Mr. Steve Trutna, who Mr. Shea claims was the person in charge of the project for Commonwealth and eventually in charge of completing the Commonwealth work for ISYS. Presumably, he would have been able to testify to the exact matters that remained to be completed under the terms of the contract and the items that had been completed, thereby tying in the invoice amounts to the work completed. With no evidence presented by Mr. Trutna or any other person directly related to the onsite administration of the project, there is no factual basis for the claim by Commonwealth that it completed work under the terms of the contract which would allow it the additional payment of $8,291.03.

The Court finds as a fact that the amount due Commonwealth for work completed pursuant to its contract obligations prior to its breach had a value as determined by the contract of $225,957.00 remaining unpaid and owed by ISYS to Commonwealth on the date of the breach.

ISYS claims a setoff against the contractual amount due for the cost of the work it assumed and completed on behalf of Commonwealth after the breach by Commonwealth.

There is no dispute that upon the breach by Commonwealth on or about June 30, 1987, ISYS incurred expenses to complete the work required of Commonwealth under the subcontract. The dispute is over the actual amount of the expenses incurred by ISYS as a result of the breach by Commonwealth. ISYS claims that it incurred direct wages for labor, direct labor fringe benefits, site overhead costs, including office supplies, clerical support and telephone expenses, materials costs, material-handling costs, including loading-dock costs, inspection costs, and general and administrative expenses which included accounting costs, administrative payroll costs, and computer costs and finally, the construction manager's salary.

Exhibit 14, which was admitted over a relevancy objection, is a copy of a computer printout showing the direct labor costs incurred by ISYS in completing the subcontract. The total direct labor costs included on Exhibit 14 is $108,665.00.

The total amount of materials cost listed on Exhibit 15, which was admitted over a relevancy and a hearsay objection, is $34,806.98.

Mr. Jon Ceretto, a former employee of ISYS who was in overall charge of the project during most of the time involved here testified that Exhibit 14 and 15 represented actual labor and material costs incurred by ISYS as a result of the breach by Commonwealth. He testified to the manner in which the information would have been obtained and the manner in which it went through the accounting system of ISYS. He further testified as to the use management made of the documents. The documents were prepared in the ordinary course of the business of ISYS and reflected the total expenses as they were recorded by onsite officials of the company contemporaneously with their incurrence.

Commonwealth claims that this Court should give no recognition to the expenses listed on Exhibit 14 and 15 because, although perhaps business records, they are not the best available evidence regarding

the incurrence of such expenses. For example, Commonwealth claims that Mr. Steve Trutna, the ISYS employee who actually was onsite and would have personal knowledge of the amount of labor used and the labor rate, plus would have personal knowledge of the material used and how it was applied to the job, should have testified. Since he did not, Commonwealth suggests that ISYS has failed to meet its burden of proof that the expenses were actually incurred.

Under Colorado law, which the parties stipulate is applicable in this case, ISYS is required to provide a "reasonable basis for computation of its damages and the best evidence obtainable under the circumstances of the case which will enable the trier of fact to arrive at a fairly approximate estimation of the loss." *Tull v. Gundersons, Inc.*, 709 P.2d 940, 945 (Colo. 1985). Damages which are uncertain, conjectural or speculative cannot be made the basis of a recovery. *Id.; Peterson v. Colorado Potato Flake & Mfg. Co.*, 164 Colo. 304, 435 P.2d 237 (1967); *Donahue v. Pikes Peak Auto Co.*, 150 Colo. 281, 372 P.2d 443 (1962). The general rule is that the evidence must be sufficient to establish the damages with at least a reasonable degree of certainty. *Morrison v. Bradley*, 655 P.2d 385 (Colo.1982).

Considering the Colorado law as expressed in the cases cited above and the documentary evidence and testimony concerning the actual labor and material expenses, this Court concludes that there is a sufficiently reasonable basis for computation of those expenses. The documents and testimony of the company employee who was in overall command of the project and was familiar with the compilation process and the use to which the company records would be put satisfy the requirement that "the best evidence obtainable under circumstances of the case" have been met. It is true, as Commonwealth complains, that Steve Trutna could have been called to testify. It is also true that someone from the accounting department could have been called to verify the procedure by which the documents, Exhibit 14

and 15, were prepared. However, none of that testimony was necessary. The documents came into evidence without a foundation objection. An employee of the company, with knowledge of their purpose and the manner in which they were prepared, testified concerning their meaning and their use. There is no reason to question their accuracy and no evidence was presented which would put into the question the accuracy of the records. The documents appear to reflect the actual labor and material costs incurred by ISYS as a result of the breach by Commonwealth.

The Court, therefore, finds as a fact that the actual labor expense incurred by ISYS as a result of the breach by Commonwealth is $108,665.00. The Court further finds as a fact that the actual material costs incurred by ISYS as a direct result of Commonwealth's breach is $34,806.98.

Mr. Ceretto also testified that Steve Trutna was employed by ISYS at an annual salary of $50,000.00. He further testified that Mr. Trutna spent at least the first month working solely on the project which is the subject matter of this lawsuit. Although he testified that Mr. Trutna spent time on this project after the first month, he was unable to testify concerning the approximate amount of time spent by Mr. Trutna on this project after the first month. Mr. Trutna was not called to testify concerning his activities and his daily time sheets were not admitted into evidence. Therefore, the only evidence this Court has of the expense incurred by ISYS with regard to Mr. Trutna's salary as construction manager is that from Mr. Ceretto's testimony. Such testimony by the manager of the project, which testimony was uncontradicted, satisfies the requirement that ISYS provide the Court with a reasonable basis for the computation. Therefore, the Court finds that ISYS incurred an expense of $4,167.00 for one month of services of Steve Trutna, the construction manager. Such expense was directly attributable to the breach by Commonwealth.

The balance of the expenses claimed by ISYS, direct labor fringe, site overhead,

material overhead and general administrative have not been proved. The evidence presented by ISYS in support of each of those amounts included company documents that showed the overhead expenses as a percentage of direct costs. There was testimony that the overhead percentages have been calculated by use of the accounting system and were the same overhead expense percentages that were used in calculating the costs of all jobs or of other jobs bid and completed by the company. However, there was no testimony, nor was there any documentary evidence, that the general overhead percentages incurred by the company on other projects had any relationship to the actual costs involved in completing the Commonwealth subcontract. For example, ISYS claims a direct labor fringe cost equal to thirty percent of its actual direct labor costs. It based such calculation on its historical records. However, in this case, when Commonwealth left the job, ISYS simply employed all of the union electricians that had been working on the project for Commonwealth. ISYS assumed the contract obligations for the union labor cost and made a direct payment to the union for pension benefits. There is no evidence presented as to the amount of that direct payment which would be the best evidence of the actual pension expense incurred on behalf of the union employees.

In addition, Jon Ceretto testified that ISYS employees received various benefits, some of which accrued immediately upon employment and some of which accrued only upon employment after a period of time, such as six months. Mr. Ceretto was unable to identify which, if any, union employees were employed for the length of time necessary to obtain certain fringe-benefit rights. Therefore, there is no competent evidence before the Court concerning the actual direct labor fringe costs incurred by ISYS as a result of Commonwealth's breach.

The same is true of other overhead items. With regard to the site overhead, there was testimony that after the breach, ISYS was required to employ a full-time secretary on the site. That secretary had previously been an employee of Commonwealth. Her actual payroll records are available at ISYS, but were not offered into evidence. The secretary did not testify concerning the services she rendered with regard to this project nor did anyone testify concerning how much time she spent which would be solely attributable to the project resulting from the Commonwealth breach.

Certain equipment was rented, such as photocopy equipment and other office equipment and supplies. ISYS has the records concerning those actual expenses. They were not offered into evidence.

ISYS also has the payroll records of all individuals involved in the figures used for material overhead, general and administrative costs. There was testimony that certain employees would spend a certain amount of time purchasing materials and receiving such materials, as well as distributing them to the appropriate portion of the job site. There was testimony that a part-time employee was required in the California general offices of ISYS to aid with the additional administrative tasks which were incurred as a result of the Commonwealth breach. No evidence was presented with regard to how much time those people spent on this project or even what their salaries were.

The Court concludes that there is no direct link between the documentary evidence presented by ISYS concerning site overhead, material overhead, general and administrative costs and the breach by Commonwealth. To restate Colorado law, "a person who has broken a contract will not be permitted to escape liability because of the lack of a perfect measure of the damages caused by his breach. A reasonable basis for computation and the best evidence obtainable under the circumstances of the case and which will enable the trier of facts to arrive at a fairly approximate estimate of the loss is sufficient." *A to Z Rental, Inc. v. Wilson,* 413 F.2d 899 (10th Cir.1969); *Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985).

It is a common practice in the industry to calculate project costs by using an over-

head estimate based on actual historical costs. Annotation, *Overhead Expenses as Recoverable Element of Damages*, 3 A.L. R.3d 689 (1965). However, to recover damages for costs incurred completing the subcontract duties of Commonwealth, ISYS should have submitted cost figures which were directly related to this project or submitted evidence that ISYS determined that the project was similar enough to others it had performed that its historical overhead percentages were a reasonable basis for determining damages.

The best evidence obtainable under the circumstances of this case were the actual company records concerning expenses directly attributable to the breach by Commonwealth. Those company records were not presented and the general overhead percentages calculated in the company accounting system for other projects are not considered by this Court to be satisfactory evidence of actual costs attributable to the breach by Commonwealth.

The amount which ISYS may offset against the Commonwealth contract obligation includes $108,665.00 for direct labor; $34,806.98 for direct material; $4,167.00 for one month of Steve Trutna's salary. The total is $147,638.98. Deducting such amount from the contract amount owed to Commonwealth, $225,957.00 leaves a balance due Commonwealth of $78,318.02. The parties have stipulated that Colorado statutory interest should apply. They have further agreed that this applicable interest rate is eight percent per year from the petition date to date of judgment.

This adversary proceeding is a turnover action under Section 543 of the Bankruptcy Code. Commonwealth has claimed that ISYS has withheld since the petition date, August 8, 1987, certain amounts due under the terms of the subcontract. This Court has now found the amount to be $78,318.02. Interest shall accrue from August 8, 1987, to judgment date at eight percent per annum. Thereafter, interest shall accrue at the federal judgment rate.

### Count II. Commonwealth's Claim Regarding Government Delays

During the administration of the contract and prior to the breach by Commonwealth, certain delays occurred for which Commonwealth claims an equitable adjustment of the contract price. The prime contract between ISYS and the Government requires any such adjustments to be treated as a "dispute" and resolved pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1987). That Act permits the prime contractor, in this case, ISYS, to file claims with the Government. Those claims can be claims solely of the prime contractor or can include subcontractor claims.

■ A subcontractor, such as Commonwealth, has no right to submit a claim directly to the Government or to bring any type of an action against the Government for its claim. *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984).

Commonwealth prepared a claim and certified it as accurate, using the statutory certification language. The statutory language which applies to claims filed by contractors against the Government is found at 41 U.S.C. § 605(c)(1). It states in part as follows:

> For claims of more than $50,000.00, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

Commonwealth used the same language except that instead of alleging that the Government was liable, it alleged that the contractor was liable. Its claim is found at Exhibit 6 and its certification states:

> I certify that this claim is made in good faith; that the supporting data are accurate and complete to the best of our knowledge and belief; and that the amount requested accurately reflects the Subcontract adjustment for which the Subcontractor believes the Contractor is liable.

The claim was submitted to ISYS, which reviewed it, made certain deletions from it,

added certain ISYS claims to it and submitted it to the appropriate contracting officer for the United States Government. The ISYS claim which was submitted to the Government is found at Exhibit 7. Its certification reads as follows:

I certify that this claim is made in good faith; that the supporting data are accurate and complete to the best of our knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which Contractor believes the Government is liable.

The Government has not yet made a decision on the validity of the claim submitted to it by ISYS. ISYS has received no funds representing the proceeds of such claim and no payments have been made to Commonwealth. Commonwealth now claims that ISYS is liable to Commonwealth for the amount of Commonwealth's claim. The liability theory rests upon an interpretation of the subcontract document running between ISYS and Commonwealth and the interpretation of the certification by ISYS to the Government.

Concerning the right of Commonwealth to look directly to ISYS for payment of the additional costs incurred as a result of Government delays, the subcontract must be interpreted to determine whether Commonwealth has a direct cause of action against ISYS or whether, by virtue of the subcontract language, Commonwealth must await a final determination by the Government. The parties have agreed that the issue is whether or not the subcontract contains "pass-through" language. If it does, Commonwealth cannot litigate directly with ISYS and must await the Government decision on the combined Commonwealth–ISYS claim. A "pass-through" provision is a contractual provision that requires a subcontractor to pursue claims caused by the Government through the disputes process contained in the contract between the contractor and the Government.

The Contract Disputes Act controls the relationship between the prime contractor and the Government. It gives no rights to the contractor's subcontractors to bring any claim against the Government for Government-caused cost increases. Therefore, many subcontracts provide that if the subcontractor has a claim for Government-caused cost increases, that claim must be "sponsored" by or "passed through" the prime contractor to the Government. Those subcontract clauses require the subcontractor to await final determination by the Government and prohibit a direct claim against the contractor for Government-caused costs. Note, *Facilitating Subcontractor's Claims Against the Government Through the Prime Contractor as the Real Party in Interest*, 52 Geo.Wash.L. Rev. 146 (1983); Braude, *Pass-through Claims and Liquidation Agreements*, No. 89–7 Constr. Briefings (1989).

The subcontract has no specific language directing that such subcontractor claims against the Government may be pursued only through the contractor and be subject to the final determination of the Government under the Contract Disputes Act. Plaintiff's Exhibit 5 is the subcontract in question. At Section *G–6–Disputes*, the first subparagraph, (a), states that "this contract is subject to the Contract Disputes Act of 1978 (P.O. 95–563) (the Act)." ISYS argues that the quoted language means that all claims against the Government must be submitted only according to the terms of the Contract Disputes Act. In the *Disputes* section of the subcontract at (c)(iii), the language is as follows: "A claim by the SUBCONTRACTOR shall be made in writing and submitted to the CONTRACTOR for a written decision...."

In the *Disputes* section of the subcontract at (e), it states: "For SUBCONTRACTOR certified claims in excess of $50,000, the CONTRACTOR must decide the claim within 60 days or notify the SUBCONTRACTOR of the date when the decision will be made."

Subparagraph (f) provides that contractor's decision shall be final unless subcontractor appeals or files a suit as provided in the Act.

Subparagraph (g) provides that interest will be due to the subcontractor from the date the contractor receives the claim, but

only on the amount found due to the sub-contractor.

Another part of the subcontract, Section G–60–*Certification of Requests for Adjustment or Relief Exceeding $100,000,* requires the subcontractor claimant to certify to the contractor the amount due for equitable adjustment or otherwise. The language required at Section G–60–(a) is as follows: "I certify the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; and that the amount requested accurately reflects the subcontract adjustment for which the SUBCONTRACTOR believes the CONTRACTOR is liable."

As previously mentioned, the claim presented by Commonwealth to ISYS had the appropriate certification language in which the subcontractor claimed that the money was owed from the contractor.

 There is not one phrase in the subcontract which specifically requires the subcontractor to await a final determination by the Government on the contractor's claim submitted pursuant to the Contract Disputes Act. Stating in the subcontract at the Disputes section that all disputes were subject to the terms of the Contract Disputes Act does not confer jurisdiction upon the Federal Government to entertain disputes between the subcontractor and the contractor. Stating that disputes are subject to the Contract Disputes Act does not give the subcontractor any right to bring any type of an action, administrative or otherwise, against the Government.

 ISYS cites *Granite Computer Leasing, Corp. v. Travelers Indem. Co.,* No. 81 Civ. 7705, 1987 WL 8647 (S.D.N.Y. April 2, 1987) (LEXIS, Genfed library, Dist. file), as authority for its position that Commonwealth must await Government determination of the ISYS claim because of the reference in Section G–6 *Disputes* to the subcontract being subject to the Contract Disputes Act. However, as is clear from *Granite Computer Leasing Corp.* case, the subcontract in that case specifically incorporated the provisions of the prime contract with regard to claims against the

Government and specifically provided the manner in which the subcontract terms would be adjusted if the Government, dealing with the prime contractor, granted the prime contractor certain adjustments. *Id.* at 10. The court did find in that case that the subcontractor was bound by the Contract Disputes Act, but it made such a determination based upon the substantive language of the subcontract itself, and not on language that simply expressed that the subcontract would be subject to the Contract Disputes Act. *Id.* at 10–12.

There has been no case law cited and this Court has found no case law which construes language such as that in this subcontract, incorporating the Contract Disputes Act, as binding upon the parties, unless other provisions of the subcontract contain "pass-through" type language. Each of the cases cited by ISYS concerns an interpretation of a subcontract and specific subcontract language concerning the "sponsorship" or "pass-through" provisions. Such language permits the contractor to remain free of direct claims by the subcontractor while claims submitted to the Government under the Contract Disputes Act are pending. Since there is no such language in this subcontract, the Court finds that it is not a "pass-through" type contract and Commonwealth may bring a direct action against ISYS for its claim.

 Commonwealth asserts that because ISYS used the Contract Disputes Act certification, required both by the Act and by the prime contract between the Government and ISYS, ISYS has thereby ratified or agreed to the amount Commonwealth claims is due. Therefore, according to Commonwealth's argument, there is no need for further determination of this fact by the Court and judgment should be entered in favor of Commonwealth on its claims.

Concerning certification, Commonwealth is incorrect as a matter of law. The Federal Circuit Court in the case of *United States v. Turner Constr. Co.,* 827 F.2d 1554 (Fed.Cir.1987), when faced with this

same argument, stated: "Thus, how the prime contractor itself would resolve the dispute should not be relevant to the certification issue; the prime contractor should not, through the requirement that it certify subcontractor claims, be used as a substitute for the contracting officer or the board in the determination of the merits of the submitted claims under the C.D.A." *Id.* at 1561. The Government had argued that the certification by the prime contractor must reflect the prime contractor's own belief that the submitted claim reflected the amount owed by the Government.

The Contract Disputes Act, and the contract running between the Government and contractor require, before the Government will consider any claim for adjustment, whether it be on behalf of the contractor itself or on behalf of the subcontractor, that the contractors use specific certification language, which ISYS has done in this case. Such certification, however, is not to be construed as an admission that the amount claimed by the subcontractor is accurate and is due. It is simply a requirement that the contractor make a review and determine whether or not there is a reasonable basis for the claim. *United States v. Turner Constr. Co.*, 827 F.2d 1554 (Fed.Cir.1987).

In conclusion, the Court finds that Commonwealth may bring a direct action against ISYS for its claim. The Court further finds that the certification by ISYS to the Government of the amount claimed due to Commonwealth is not binding upon ISYS.

If Commonwealth is determined to pursue its claim against ISYS in this Court, a pretrial statement will be required concerning the factual issues in dispute. That pretrial statement should be filed by July 15, 1990, unless the parties, or either of them, request a continuance of that requirement. If Commonwealth does not desire to pursue the action in this Court, but determines to pursue the claim as if it were a pass-through claim, the parties should notify this Court on or before July 15.

Separate judgment entry shall be filed.

## JUDGMENT

Judgment is entered on Count I of the complaint in favor of plaintiff and against defendant in the amount of $78,318.02 plus interest at 8% per annum from and after August 8, 1987, until date of judgment and at the federal statutory interest rate thereafter.

Plaintiff may bring a direct action against the defendant on the "Government" claim but the certification of such claim by defendant to the Government is not a ratification or an admission of its certainty.

See memorandum this date.