**J.M.T. MACHINE COMPANY, INC., Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Appeal No. 86–1288.**

United States Court of Appeals, Federal Circuit.

April 30, 1987.

Unpublished Opinion Issued April 30, 1987.

Published Opinion July 10, 1987.

Fred Barakat, Oxford, Pa., argued, for appellant.

Lynn J. Bush, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief, was Capt. Martin Healey, Office of the General Counsel, Dept. of the Army, of counsel.

Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and ARCHER, Circuit Judge.

SKELTON, Senior Circuit Judge.

## DECISION

The consolidated decisions of the Armed Services Board of Contract Appeals (ASBCA or Board) in ASBCA Appeal No. 29739 allowing interest owed to contractor J.M.T. Machine Company, Inc. (JMT) on the quantum of a termination inventory claim from the date a properly certified claim was filed by JMT with the contracting officer on February 20, 1984, instead of from May 12, 1980, as claimed by JMT, and denying JMT's application for an attorney fee in ASBCA Appeals Nos. 23928, 24298 and 24536 because it was untimely filed, are *affirmed.*

## OPINION

The facts in this case are complicated but not in dispute. The case has been litigated extensively in the ASBCA, as is partially shown by the background information below. The interest question and the attorney fee controversy are the only two issues involved in the appeal.

## BACKGROUND

The case involves a supply contract awarded in 1976 by the United States Army to JMT for 124 telescope mounts for howitzers. The contract was terminated by the Government for default on September 5, 1979. As a result of this termination, three appeals to the Armed Services Board of Contract Appeals arose: (1) an appeal by JMT from the termination for default (ASBCA No. 24298); (2) an appeal by JMT from the contracting officer's decision granting an equitable adjustment in the contract price for additional work (ASBCA No. 23928); and (3) an appeal by the Government on its demand for the return of unliquidated progress payments (ASBCA No. 24536). These three appeals were consolidated by the Board for hearing and decision.

After the cases had been briefed by the parties and heard by the Board, the Government moved to dismiss the appeals for lack of jurisdiction on the ground that JMT had failed to comply with the claim certification requirement of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 605(c)(1). With the exception of the unquantified monetary claims in the default termination complaint, the Board denied that motion on January 12, 1984. In that decision, the Board dismissed without prejudice as premature JMT's alleged "claim" for "costs of terminated inventory." The Board noted there had been no contracting officer's decision on that "claim," nor any appeal therefrom, and JMT had submitted no certification of its so-called claim as required by the CDA. JMT appealed from this dismissal order in its ASBCA Appeal No. 29739, claiming that it had certified its termination inventory claim on May 12, 1980, and that it should recover interest from that date. Nevertheless, JMT filed another termination inventory claim with the contracting officer on February 20, 1984, properly dated, signed and certified

and demanding a decision. On December 27, 1985, the Board issued its opinion in this appeal in favor of the Government by holding that interest should begin to accrue on February 20, 1984, instead of on May 12, 1980, as claimed by JMT.

In the meantime, in a December 19, 1984, decision on the merits, the Board ruled in favor of JMT in all three consolidated appeals. In ASBCA No. 23928, the equitable adjustment granted by the Board was more than that allowed in the contracting officer's decision. In ASBCA No. 24298, the default termination was converted into a termination for the Government's convenience, and in ASBCA No. 24536, the Government's demand for the return of unliquidated progress payments was denied.

On December 2, 1985, JMT filed an application for award of attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, (EAJA) in the three consolidated appeals, ASBCA Nos. 23928, 24298, and 24536.

On January 13, 1986, the Government moved to dismiss as untimely JMT's application for attorney fees in the three consolidated appeals. The Board granted this motion on March 17, 1986, and dismissed the application as untimely.

JMT appeals, seeking an award of interest on the termination inventory claim, which claim the parties had settled for $131,300, from May 12, 1980, and seeking a ruling by this court that its application for attorney fees was timely and a remand of its application to the Board for consideration on the merits.

## THE INTEREST CLAIM

Following the termination of the contract for the convenience of the Government, the parties settled all of the termination inventory claim, except the date from which interest was to be computed. The Board found that on September 18, 1979, the contracting officer requested JMT to submit an inventory of completed or partially completed supplies which had been produced or acquired for performance of the contract (termination inventory) for the purpose of

considering purchase of these materials from JMT. This request was repeated several times, but JMT never submitted the requested inventory nor filed a claim. Finally, on January 17, 1980, the Government attorney included the request for a termination inventory in interrogatories directed to JMT. JMT sent its responses to the Government trial attorney on March 26, 1980, which consisted of a stack of 15 separate documents, none of which was identified as a claim. The documents were variously labeled "Settlement Proposal (Inventory Basis)," "Contractor's Offer," "Proposal Number 1," and "Interim Proposal." Also included were inventory lists and work schedules of the contract. None of the documents were signed or dated. These documents were not sent to the contracting officer by JMT. The Government trial attorney did not send them to the contracting officer either, as he did not consider them a claim, and JMT did not ask him to do so. The documents were not certified as required by the CDA, and no demand was made by JMT for a decision by the contracting officer.

The Government trial attorney wrote JMT on April 18, 1980, advising it of the certification requirement of CDA, whereupon JMT forwarded to the Board (and not to the contracting officer) on May 12, 1980, a certificate dated April 29, 1980, relating to all three appeals, none of which at that time included the termination inventory claim. The certificate did not refer to any specific claim but simply stated "our claim." The covering letter of May 12, 1980, referred to the three appeals by their ASBCA docket numbers. The contracting officer never received the termination inventory and did not know whether it existed on the date of the covering letter.

On June 8, 1980, the Government moved to dismiss all three appeals for lack of jurisdiction due to JMT's failure to properly certify its claims, including the termination inventory claim. JMT argued before the Board and contends here that its certification of May 12, 1980, covered all of its claims, including the termination inventory claim. On January 12, 1984, the Board

granted the motion as to the termination inventory claim and dismissed that claim, saying:

> We also dismiss without prejudice as premature appellant's stated claim for "costs of terminated inventory." There has been neither a contracting officer's decision on appellant's termination settlement proposal (on inventory basis) filed with the Government in March 1980 nor an appeal therefrom. [Citations omitted]

> Furthermore, contrary to appellant's assertion (response to motion at para. 10, at 7), this claim in excess of $50,000 has not been certified. The certification of 29 April 1980 was submitted with respect to the appeals in ASBCA Nos. 23928, 24298 and 24536 (ltr of 12 May 1980, Board file), NONE OF WHICH AT THAT TIME INCLUDED THE TERMINATION SETTLEMENT CLAIM. [Emphasis added] (84–1 BCA at 85,238)

Following this decision by the Board, JMT submitted a proper termination inventory claim, duly signed and certified, to the contracting officer on February 20, 1984, with a request for a decision. This claim was in proper form and was properly submitted. Thereafter, the parties settled the claim as aforesaid, but could not agree when interest would start to accrue on the settlement. JMT filed an appeal to the Board in ASBCA Appeal No. 29739 for a determination of this issue, which is now before us.

JMT argued before the Board and argues here that interest on the termination inventory settlement began to accrue on May 12, 1980, the date it submitted a late certificate dated April 29, 1980, to its claims in the three pending appeals, which certificate was to apply retroactively to the 15 documents it had delivered to the Government trial attorney on March 26, 1980, in answer to interrogatories. The Board correctly held that the late and separate certification of May 12, 1980, to the submission sent to the attorney on March 26, 1980, was ineffective to create a claim on which interest could be allowed.

It is clear that JMT did not submit a claim on March 26 or May 12, 1980, meeting the requirements of Defense Acquisition Regulation (DAR) § 7–103.12 entitled "Disputes" (1979 MAR) issued in March 1980 pursuant to the passage of the CDA, which defines a claim as follows:

> (b) "Claim" means:
>> (1) a written request submitted to the Contracting Officer;
>> (2) for payment of money, adjustment of contract terms, or other relief;
>> (3) which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and
>> (4) for which a Contracting Officer's decision is demanded.

Furthermore, JMT did not submit a termination inventory claim to the contracting officer on either or both of those dates that met the requirements of Section 605(c)(1) of the CDA which provides:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believe the government is liable.

■■■■ Under the provisions of the CDA, in order for a contractor to collect a debt of $50,000 or more, or the interest thereon, or both, from the Government, he must submit a claim in writing to the contracting officer, which describes the debt, or the interest, or both, with specificity, and which is dated, signed and certified by the contractor in accordance with Section 605(c)(1) of the CDA, and which demands a decision by the contracting officer.[1] None

---

1. U.S.C. § 611 provides in pertinent part that: Interest on amounts found due contractors on claims shall be paid to the contractor from the date the Contracting Officer receives the claim pursuant to section 6(a) from the contractor until payment is received.

Thus, interest is due a contractor on an underlying quantum claim starting from the time that the contractor first submitted a proper quantum claim to the contracting officer until the Government has paid the quantum claim. There is no provision in the CDA for a claim for

of these requirements were complied with when JMT filed its alleged claim on March 26, 1980, when it delivered a stack of documents to the Government's trial attorney in answer to interrogatories, as described above. Neither were the requirements complied with when JMT sent a delayed certification, dated April 29, 1980, to the Board on May 12, 1980, for the purpose of curing defects in the March 26, 1980, submission retroactively. JMT argues that the separate late certification sent to the Board on May 12, 1980, cured retroactively any lack of certification on the March 26, 1980, submission, even though the March 26, 1980, submission was sent to the trial attorney and the May 12, 1980, certification was sent to the Board, whereas, the CDA requires that the claim and certificate be sent to the contracting officer. The argument of JMT is unpersuasive. Regardless of the merits of the attempted certification on April 29, there was no proper submission to the contracting officer regarding the termination inventory claim which could be certified.

In this appeal of the interest question, we are called upon to review a decision of the Board issued pursuant to the CDA, 41 U.S.C. § 601 *et seq.* The scope of review is governed by Section 609(b) of the statute. *K.W. Construction, Inc. v. United States,* 671 F.2d 481, 229 Ct.Cl. 413 (1982). Section 609(b) provides:

> In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 607 of this title, notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

interest, alone, without an underlying claim upon which to base the interest. *See Essex*

Under this standard of review, the findings of fact made by the Board in this case are final and conclusive unless JMT can meet the heavy burden of establishing that, on the record compiled by the Board, the Board's findings are not supported by substantial evidence. JMT has not met this burden.

We hold that the decision of the Board is neither fraudulent, arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, and that it is supported by substantial evidence. Accordingly, JMT is not entitled to recover interest from May 12, 1980, and is only entitled to interest from February 20, 1984, which the Government has already paid.

### THE ATTORNEY FEE ISSUE

■ The Board handed down its opinion in ASBCA Appeals Nos. 23928, 24298 and 24536 on December 19, 1984. JMT was the prevailing party, and now seeks an attorney fee on an application that was filed with the Board on December 2, 1985, which was denied by the Board. JMT invokes the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, Pub.L. 96–481, 94 Stat. 2325 and Pub.L. 99–80, 99 Stat. 183 in support of its application. Section 504(a)(2) of the Act provides:

> (2) A party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award under this section, and the amount sought, including an itemized statement from any attorney, agent, or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the agency was not substantially justified. . . .

According to this Section an attorney fee application must be filed within 30 days of a final disposition in an adversary adjudica-

*Electro Engineers, Inc. v. United States,* 702 F.2d 998, 1004 (Fed.Cir.1983).

tion. The 30–day filing period is a jurisdictional prerequisite to the awarding of an attorney fee. *Action On Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211, 225 (D.C.Cir.1984); and *Monark Boat Co. v. NLRB*, 708 F.2d 1322 (8th Cir.1983). It appears from the record that since the decision of the Board on the merits was issued on December 19, 1984, and the application for attorney fees was not filed until December 2, 1985, it was filed late. Without more, the application was clearly filed untimely. However, JMT argues that Section 7(c) of Pub.L. 99–80, which amended 5 U.S.C. § 504, applies to its situation and made its December 2, 1985, application unnecessary in order for it to be eligible for an attorney fee.

In order to understand this argument, it is necessary to consider some of the history of the EAJA (5 U.S.C. § 504) and especially Section 7(c) of Pub.L. 99–80. The EAJA became effective October 1, 1981, and expired by its own terms on September 30, 1984. Prior to August 5, 1985, the Board did not have the authority to award attorney fees under the EAJA. *See Fidelity Construction Company v. United States*, 700 F.2d 1379 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). On October 11, 1984, Congress passed H.R. 5479, which made the EAJA permanent legislation and gave boards of contract appeals authority to award attorney fees under 5 U.S.C. § 504. However, the President vetoed this legislation on November 9, 1984, for reasons not related to the authority of boards of contract appeals. At the same time, the President issued a memorandum to the heads of Executive Departments instructing them that pending reauthorization of the Act they should accept and retain on file applications for awards of fees pursuant to Section 203 of the Act (5 U.S.C. 504), as if the Act were in force. Congress re-enacted the law, which was signed by the President on August 5, 1985, as Public Law 99–80. As re-enacted, the Act approved the reauthorization of the EAJA, which included 5 U.S.C. § 504(b)(1)(C) that authorized boards of contract appeals to award attorney fees.

The EAJA as re-enacted was made retroactively applicable, by Section 7(c) thereof, to certain Contract Disputes Act appeals decided by the boards prior to the effective date of Public Law 99–80 (August 5, 1985). More specifically, Section 7(c) provided that it would apply to all cases pending or commenced after October 1, 1981, provided that applications for fees were timely filed and were dismissed for lack of jurisdiction.

JMT made a rather ingenious argument before the Board, and repeats it here, in its efforts to bring an attorney fee claim it had previously filed in 1982 within the parameters of Section 7(c) of the Act. It says that its trial brief that was filed with the Board on January 12, 1982, contained a request in the prayer for attorney fees in the sum of $127,500 for 1700 hours at $75.00 per hour, and when the Board rendered its decision on December 19, 1984, saying, "In these proceedings no allowance can be made for attorney fees," it was a dismissal of his claim for attorney fees for lack of jurisdiction. It argues that these events made Section 7(c) applicable to its case so that it was entitled to attorney fees without any further application. The Board did not agree and neither do we.

▮ JMT's argument must fail because it is based on false premises. In the first place, as the Board held, the 1982 trial brief request for attorney fees was not a proper application for such fees, because it was merely a prayer in a pleading and not a formal application. Furthermore, it did not contain an itemized statement of hours worked nor of charges made nor other allegations that would support an attorney fee award under Section 504(a)(2).

In the next place, the 1982 trial brief request for attorney fees was defective for the following additional reasons, among others. It did not allege, nor could it, that a final judgment had been entered in the case and that JMT was the prevailing party, nor that it was eligible to receive an award under Section 504 of the Act. Neither did it allege that the position of the agency was not substantially justified. It did not mention the EAJA. Such allegations are required for a valid EAJA applica-

tion in accordance with Section 504(a)(2). *Rawlins v. United States*, 686 F.2d 903, 231 Ct.Cl. 313 (1982).

When the Board entered its judgment on December 19, 1984, it did not dismiss JMT's 1982 trial brief request for an attorney fee for lack of jurisdiction, as claimed by JMT, and as required by Section 7(c) of the Act. The statement by the Board in the judgment that "no allowance can be made for attorney fees" was merely an observation that there was no statute at that time that authorized it to award such fees. The EAJA was not re-enacted until August 5, 1985.

Finally, the 1982 attorney fee request was not timely filed as required by Section 7(c). That Section requires a timely filing before it is applicable. Since the trial brief pleading was filed in 1982, it obviously was not filed within thirty days after the Board's decision of December 19, 1984, became final. It was clearly premature and not properly before the Board for consideration. *Austin v. United States Department of Commerce*, 742 F.2d 1417 (Fed. Cir.1984).

We conclude that Section 7(c) of the Act does not apply to JMT's 1982 trial brief application for attorney fees.

■ After the Board entered its judgment on December 19, 1984, JMT filed the formal application for attorney fees mentioned at the outset on December 2, 1985. It was found by the Board to be in proper form and meeting all the requirements of Section 504(a)(2) of the Act. JMT claims that in filing this application it was amending, supplementing, and updating its 1982 trial brief application. It relies on *Dunn v. United States*, 775 F.2d 99 (3rd Cir.1985) as authority for this action. Its reliance on that case is misplaced. In *Dunn* the plaintiff had filed a timely petition for attorney fees under the EAJA and had included therein the allegations and statements required by the statute, except for detailed information regarding the fees. The Third Circuit Court ruled that this omission was not a jurisdictional but a pleading requirement that could be supplied later as long as a timely application had been filed for at-torney fees under the EAJA. In our case, JMT did not file a timely application under the EAJA in its trial brief of 1982, and none of the allegations and statements required by the statute were included, and, unlike the plaintiff in *Dunn*, it had not obtained a judgment in its favor when it filed its trial brief. The application of December 2, 1985, could not cure these defects in the 1982 trial brief claim under the guise of an amendment. *Dunn* is clearly distinguishable and is inapplicable to JMT's case before us.

Section 504(a)(2) required JMT to file an application for attorney fees "within 30 days of a final disposition in the adversary adjudication." The 30-day period begins to run after the decision has become final and it is too late to appeal. *Taylor v. United States*, 749 F.2d 171 (3rd Cir.1985). A decision becomes final 120 days after the parties have received a copy of the decision. 41 U.S.C. § 607(g)(1). In this case the government received a copy of the Board's decision on January 3, 1985, and JMT received a copy on January 7, 1985. The 120-day period for JMT to appeal began on the latter date. Neither a motion for reconsideration nor an appeal was filed. Consequently, the decision became final at the end of that 120-day period. Instead of filing its application within the 30-day period after the decision became final, JMT waited 209 days before filing it on December 2, 1985. This filing did not comply with the statute and was untimely.

JMT makes the further argument for the first time that the Board modified its December 19, 1984, decision by issuing a modification order on November 26, 1985, involving mathematical computations of the amount due on the judgment and that this extended the time for it to file an attorney fee application. It did not raise this issue before the Board and consequently the Board did not consider it. We are a reviewing court and we only review what is contained in the Board's decision. There is nothing in that decision on this new issue. Inasmuch as JMT failed to raise this issue before the ASBCA, it is precluded from asserting it before this court, *Lizut v. De-*

*partment of the Army,* 717 F.2d 1391, 1395–96 (Fed.Cir.1983); and *William Simplex Mfg. Co. v. United States,* 506 F.2d 1406, 205 Ct.Cl. 858 (1974), and we do not consider it.

The decision of the Board is supported by substantial evidence, and we affirm its dismissal of JMT's December 2, 1985, EAJA application for attorney fees for lack of subject matter jurisdiction because it was untimely filed, and, therefore, JMT is not entitled to recover.