# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Application Under the Equal Access to Justice Act of -- ) | |
| | ) |
| Asia Commerce Network ) | ASBCA No. 58623 |
| | ) |
| Under Contract No. SP0600-12-D-1010 ) | |

APPEARANCES FOR THE APPELLANT:     Eric S. Montalvo, Esq.
Lauren R. Brier, Esq.
  The Federal Practice Group
   Worldwide Service
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:     Daniel K. Poling, Esq.
  DLA Chief Trial Attorney
Jared M. Miller, Esq.
Matthew Vasquez, Esq.
  Trial Attorneys
  DLA Energy
  Fort Belvoir, VA

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON APPELLANT'S APPLICATION UNDER THE EQUAL ACCESS TO JUSTICE ACT

Pending before the Board is an application for fees and other expenses pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, submitted by appellant, Asia Commerce Network (ACN). The underlying appeal was taken pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-7109. *See Asia Commerce Network*, ASBCA No. 58623, 17-1 BCA ¶ 36,872. Familiarity with that decision is presumed. Because we find that ACN is an eligible, prevailing party, and that the government's position was not substantially justified, we grant ACN's application but reduce the requested recovery to that which is allowed by the EAJA.

## BACKGROUND

The underlying appeal involved a January 20, 2011 contract to supply jet fuel to Bagram Air Field, Afghanistan. 17-1 BCA ¶ 36,872 at 179,732. On January 17, 2013, the Defense Logistics Agency (DLA or government) terminated the contract for cause. *Id.* at 179,740. Before the Board, the government did not meet its initial burden of proving a prima facie case of the contractor's default. The government argued that the termination was justified because ACN failed to deliver fuel by the delivery date and did not comply with the contract requirements for construction of the pipeline. But the record before the

Board left no doubt that the government waived the delivery date and did not re-establish a new one. *Id.* at 179,745. Moreover, the weight of the evidence established that ACN's performance complied with the terms of the contract. *Id.* at 179,745-46.

## DISCUSSION

As a partial waiver of sovereign immunity, the EAJA is to be strictly construed in favor of the United States. *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991). To recover under the EAJA, an applicant must timely file its application, establish it is an eligible party as defined by EAJA, and prove that it was a prevailing party in the underlying action. *Rex Sys., Inc.*, ASBCA No. 52247, 02-1 BCA ¶ 31,760 at 156,854. Even if an applicant is otherwise qualified, an award may be denied if the government's position is determined to have been substantially justified, or if special circumstances make an award unjust. 5 U.S.C. § 504(a)(1).

DLA does not oppose ACN's application on the basis of ACN's status as a prevailing party, the timeliness of the application, or whether its position was substantially justified. Instead, DLA argues that ACN did not provide evidence it was an eligible party, nor did ACN properly calculate its fees and costs. (Gov't opp'n at 3-4) In its reply, ACN submitted additional evidence supporting its position that it is an eligible party. It also reduced the quantum requested based on calculations made by DLA. (App. reply br. at 1-3)

### Timeliness

A party seeking an award of fees and other expenses shall file its application within 30 days of a final disposition of an adversary adjudication. 5 U.S.C. § 504(a)(2). The 30-day filing period is a jurisdictional prerequisite to an EAJA application. *J.M.T. Machine Co. v. United States*, 826 F.2d 1042, 1047 (Fed. Cir. 1987). The Board's decision sustaining the appeal was issued on October 4, 2017. ACN's application for award of fees and expenses was filed on November 3, 2017, and is, therefore, timely.

### Prevailing Party

In its decision, the Board affirmed ACN's appeal, finding that the government did not meet its burden to demonstrate a prima facie case of default by ACN. As a result, the termination for default was converted to one for convenience. *Asia Commerce Network*, 17-1 BCA ¶ 36,872 at 179,746. We find, and the government does not contest, that ACN was the prevailing party.

### Eligibility

A party is generally eligible for consideration of an award of costs if it is an entity having a net worth of no more than $7,000,000 and no more than 500 employees at the time the adversary adjudication was initiated, in this case April 15, 2013.

2

5 U.S.C. § 504(b)(1)(B)(ii). ACN asserts that it is eligible to receive fees and expenses under the EAJA because it meets the criteria described above. The government disagrees.

To support its position, ACN submitted a declaration of Ahmad Jawed Javed, president and CEO of ACN, as part of its application (app. br., ex. 2). It also submitted a copy of ACN's 2013 bank statements from the National Bank of Pakistan – Kabul Branch (*id.* at 2-3). In its answer, the government contested the sufficiency of ACN's evidence to establish it met the criteria for relief under the EAJA, stating that a bank balance sheet did not identify net worth by accounting for assets and liabilities (gov't opp'n at 5). The government also asserted that because ACN was a sole proprietorship, the net worth of both ACN and Mr. Javed must be combined to determine eligibility under the EAJA (*id.* at 6).

In response, ACN included in its reply brief a fixed asset register for assets maintained from June 20, 2012 through June 30, 2013, a supplemental affidavit of Mr. Javed, the expert reports of appellant's forensic accounting expert Mr. James McGovern, ACN's 2013 bank statements, 2012 – 2014 profit and loss statement, and a General Logistics Group tax report issued by the Government of the Islamic Republic of Afghanistan (app. reply br., exs. A-H). ACN asserts that these documents, taken in totality, prove that it meets the eligibility requirements for an award of fees.

By Order dated September 11, 2018, the Board requested supplemental briefing from the parties regarding Mr. Javed's net worth and ACN's sole proprietorship status. Specifically, the Board requested information regarding the difference, if any, between the meaning of "a sole proprietorship" under US and Afghanistan law, as well as documented proof of Mr. Javed's personal net worth at the time the appeal was filed.

In its supplemental brief, ACN provided evidence to demonstrate that it had been improperly characterized as a sole proprietorship, when it was actually a limited liability corporation (LLC) (app. supp. br. at 1-3). ACN explained that the characterization as a sole proprietorship came from mistaken reliance on ACN's record entry in the System for Award Management registration portal (*id.* at 3). To support its position, ACN stated that the articles of incorporation, as well as ACN's registration with the Afghanistan Central Business Registry & Intellectual Property (ACBRIP) clearly characterized ACN as an LLC, and provided evidence of its registration status with the ACBRIP, a copy of its Ministry of Commerce and Industries (MoCI) business license, and its articles of incorporation (*id.*, exs. A-C). The ACBRIP verification, which can be obtained online, identifies the "business type" for ACN as "Limited Liability Company (Ltd)" (*id.*, ex. A). The company name listed on the MoCI business license as well as the articles of incorporation also identify ACN as a "LTD" (*id.*, exs. B, C).

The government did not refute the evidence presented by ACN. Instead, the government argues that ACN waived its argument that it is an LLC because it did not make the argument in its reply brief (gov't supp. br. at 2). The government also states that

3

the prior affidavits, which identify ACN as a sole proprietorship, should not be overridden by the subsequent evidence.

The EAJA defines "party" as "any...corporation...the net worth of which did not exceed $7,000,000 at the time the adversary adjudication was initiated." 5 U.S.C. § 504(b)(1)(B)(ii). "Net worth is determined by subtracting an applicant's total liabilities from its total assets." *Kostmayer Constr., LLC*, ASBCA No. 55053, 09-2 BCA ¶ 34,302 at 169,440 (citing *Broaddus v. United States Corps of Engineers*, 380 F.3d 162, 167 (4th Cir. 2004); *Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1178 (10th Cir. 2000); *City of Brunswick, GA v. United States*, 849 F.2d 501, 503 (11th Cir. 1988), *cert. denied*, 489 U.S. 1053 (1989)). The Board has rejected the argument that the net worth of a corporation's individual shareholders should be considered in determining the eligibility of the corporation. *Kostmayer*, 09-2 BCA ¶ 34,302 at 169,442 (citing *Beta Engineering, Inc.*, ASBCA Nos. 53570, 53571, 03-1 BCA ¶ 32,213 at 159,322).

Here, the government's argument that Mr. Javed's net worth must be combined with ACN's in order to determine eligibility is not persuasive. The Board finds the supplemental evidence provided by ACN sufficient to establish that ACN is an LLC and that the prior characterization of ACN as a sole proprietorship was mistaken.

The government alleges that ACN has waived its argument that it is an LLC and not a sole proprietorship by not addressing the difference in its reply brief (gov't supp. br. at 2). We disagree. The cases cited by the government to support this position (*Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 876-77 (E.D. Mich. 2018); and *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 386 (S.D.N.Y 2018)) are not binding on the Board and are distinguishable from the issue at hand. None of the parties in those matters were asked by the court to provide supplemental factual information. While there was additional briefing allowed in *Mote v. City of Chelsea*, it is unclear if the additional briefing was requested by the court, 284 F. Supp. 3d at 876-77. What is clear though, is that the topic on which the parties provided additional briefing was a legal issue which ultimately "amounted to another summary judgment motion based on a new theory that contradicted a position [taken] in an earlier brief." *Id*. This is not the case here. The supplemental evidence supplied by ACN clarified a factual issue and did not present any new legal theories about the underlying recovery requested by ACN. The issues found to be waived in the cases cited by the government were purely legal. Here, the Board, acting as the fact-finder, has found sufficient evidence to establish ACN's status as an LLC. No new legal arguments were presented to the Board.

The Board notes that it did not receive the requested evidence of Mr. Javed's personal net worth. While the government alleges this is detrimental to ACN's recovery, our finding that ACN is an LLC makes evidence of the owner's net worth irrelevant to the issue of eligibility to recover under the EAJA.

4

The Board must now determine the adequacy of the proof of net worth provided for ACN. Appellant bears the burden of proving its eligibility for an award. *Kostmayer*, 09-2 BCA ¶ 34,302 at 169,442 (internal citations omitted). While "[t]here is no set rule regarding the adequacy of documentation required to establish an EAJA applicant's net worth...the effort required to secure an EAJA award should not result in any additional major litigation." *Id.* at 169,443 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Evidence is considered on a case-by-case basis, and supplementation of initial, deficient applications is generally allowed. *Id.* (internal citations omitted).

Given the totality of the circumstances in this matter, we find that appellant has proven that it is eligible for an award. The evidence presented demonstrates that ACN's net worth was under $7,000,000 at the time the appeal was filed in April 2013. ACN's fixed asset register identifies $5,846,009.00 in assets as of June 30, 2013, and more accurately $5,513,537 after a write-down for depreciation (app. reply br., ex. A). ACN's bank statements show that it had a balance of only $656.27 in April 2013 (app. reply br., ex. D at 7). ACN did not provide a breakdown or calculation of its liabilities following contract termination in January 2013. Instead, it provided a profit and loss sheet, evidencing that from June 1, 2012 until May 30, 2014, ACN incurred a net loss of $1,964,533.70 (app. reply br., ex. E). In his supplemental affidavit, Mr. Javed attributes this loss to the termination for default and subsequent lack of payment (app. reply br., ex. B at 2). Taking all of the factors into account and before subtracting liabilities, ACN's assets are at least $1 million below the requisite eligibility threshold.

We also find that ACN provided sufficient evidence to establish that it did not employ more than 500 employees at the time the appeal was filed. While the employee lists provided by ACN are dated through the end of 2012, Mr. Javed's supplemental declaration asserts that most of the staff was let go immediately following the termination of the contract, and the documents provided accurately reflected "the amount of people ACN employed at the time of this appeal" (app. reply br., ex. B at 2, ex. H). Even so, the payroll and list of staff provided shows only 15 to 39 individuals were employed with ACN from September 2012 to December 2012 (app. reply br., ex. H). The Board accepts Mr. Javed's declaration, coupled with the documentary evidence contained in Exhibit H to ACN's reply brief, as credible. ACN employed less than 500 people at the time this appeal was filed, making it eligible for consideration of an award under the EAJA.

Substantial Justification

ACN argues that the government's position in the underlying appeal was not substantially justified. In its reply brief, the government did not address whether its position was substantially justified, apparently waiving this argument. Even so, substantial justification is determined on the entire record before the Board. *Pro-Built Construction Firm*, ASBCA No. 59278, 18-1 BCA ¶ 36,975 at 180,116 (citing *Job Options, Inc.*, ASBCA No. 56698, 11-1 BCA ¶ 34,663 at 170,761). The government bears the burden to show that its position was substantially justified. *Amaratek*, ASBCA Nos. 59149, 59395, 15-1 BCA ¶ 35,866 at 175,348 (citing *Lucia E. Naranjo*, ASBCA

No. 52084, 00-2 BCA ¶ 30,937 at 152,707). To prevail on a substantial justification defense, the government is not required to prove that it had a substantial likelihood of success in the litigation. Rather, the government has the burden of proof to demonstrate that "a reasonable person could think [the government's position is] correct, that is [that] it has a reasonable basis in law and fact." *Pro-Built*, 18-1 BCA ¶ 36,975 at 180,116 (citing *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988); *Rex Systems*, 02-1 BCA ¶ 31,760 at 156,854).

In its termination for cause, the government asserted that ACN failed to timely deliver and was non-compliant with the terms of the contract. However, the record in this appeal clearly established that the government had waived the original delivery date and failed to establish a new one. Moreover, the contracting officer (CO), in her testimony, abandoned this ground for termination, testifying that the termination was driven by her concern about ACN's technical capabilities and that the timeliness of deliveries was not a factor. *Asia Commerce Network*, 17-1 BCA ¶ 36,872 at 179,745.

The second asserted ground for termination, noncompliance with contract terms and conditions, was not supported by the contract nor by the weight of testimony at trial, including that of the government's own witnesses. The CO's mistaken impression that cathodic protection for the pipeline was required by API 5L Standard was debunked at trial not only by ACN's expert, but also by a DLA engineer testifying as a government witness. 17-1 BCA ¶ 36,872 at 179,742. As to whether the pipeline was required to be encapsulated in concrete, this was not a contract requirement. One government witness testified that ACN proposed concrete only for two sections of pipe, to protect it from heavy traffic and to elevate it over water in low-lying areas. *Id.* at 179,745. Another government witness testified that enclosing the entire length of a pipeline in concrete is not industry practice, and two government witnesses plus ACN's expert testified that doing so would not be effective for containing spills. *Id.* at 179,746.

Given the foregoing, we fail to see how a reasonable person could think the government's position had a "reasonable basis in law and fact." *Pro-Built*, 18-1 BCA ¶ 36,975 at 180,116. Thus, we find the government's position not substantially justified.

## Special Circumstances

The government has not contended that there are any special circumstances that would make an award of fees and costs unjust. 5 U.S.C. § 504(a)(1). We conclude that no special circumstances exist to preclude an EAJA award.

## Request for Attorneys' Fees in Excess of 5 U.S.C. § 504(b)(1)(A)

ACN requests an increased rate of $196.00 per hour for attorneys' fees, based on the cost of living in the Washington, DC, metropolitan area and the specific government contract litigation knowledge of appellant's law firm (app. br. at 8-10). In *Optimum*

*Services, Inc.*, ASBCA Nos. 58755, 59952, 17-1 BCA ¶ 36,816, the Board held that it has no authority to award fees in excess of the $125 per hour in the EAJA, stating:

> With respect to the question of fee enhancement, the EAJA provides that "attorney...fees shall not be awarded in excess of $125 per hour unless *the agency determines by regulation* that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys or agents for the proceedings involved, justifies a higher fee." 5 U.S.C. § 504 (b)(1)(A) (emphasis added). Our Board jurisprudence has long held that the EAJA "does not confer on the ASBCA discretion to apply cost of living or special factor increases without an agency determination so prescribing by regulation." *Freedom, NY, Inc.*, ASBCA No. 43965, 09-1 BCA ¶ 34,097 at 168,595; *see also ABS Baumaschinenvertrieb, GmbH*, ASBCA No. 48207, 01-2 BCA ¶ 31,549 at 155,826-27 (declining to enhance fees where "the Department of Defense has not issued such a regulation authorizing enhancement of fees based on cost of living or any other special factors"); *Arapaho Commc'ns, Inc./Steele & Sons, Inc., Joint Venture*, ASBCA No. 48235, 98-1 BCA ¶ 29,563 at 146,544 ("No such regulation has been issued by the Department of Defense. We have no authority in this instance to award more than [the statutory rate.]").

*Id.* at 179,431-32; *see also Assessment and Training Solutions Consulting Corporation*, ASBCA No. 61047, 18-1 BCA ¶ 37,075 at 180,454. As of the date of this decision, no such regulation has been issued by the Department of Defense, and the Board has no authority to award enhanced fees.

In its application, ACN listed the number of hours worked by the attorneys in this appeal as 1,512.60 and the paralegals and law clerks as 405 (app. br. at 12). Billing entries were included supporting these figures (app. br., ex. 3A). In its response, the government agreed that the majority of the bills are related to the appeal, but argued that 14.2 attorney hours and 27.5 paralegal/law clerk hours were either unrelated to this appeal or duplicate entries (gov't opp'n at 9-10). ACN agreed in its reply that the hours were unrelated and/or duplicate, and reduced the total hours requested to 1,498.4 attorney hours and 377.5 paralegal/law clerk hours (app. reply br. at 2 nn.2-3). After review of the billing entries, the Board agrees that the reductions are proper. Attorney and paralegal/law clerk fees are awarded as follows:

| Type | Rate | Hours | Fees |
|---|---|---|---|
| Attorneys' fees | $125/hour | 1,498.4 | $187,300.00 |
| Paralegal and law clerk fees | $122/hour | 377.5 | $46,055.00 |
| Total | | | $233,355.00 |

## Request for Expert Fees

Initially, ACN sought to recover expert fees in the amount of $50,649.33, in addition to attorneys' fees (app. br. at 13-14). In its answer, the government argued that the claimed expenses exceed those allowed by the EAJA, and if any award is made, it should be adjusted to the rate which applied to the highest fixed rate by the Classification Act Schedules for GS-15 in 2014 and 2015 (gov't opp'n at 10-12). In its reply, ACN agreed with the government's adjustment, and reduced its requested expert witness fee request to $16,464.55 (app. reply br. at 2 n.4).

With regard to expert witness fees, the EAJA provides that "no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the agency involved." 5 U.S.C. § 504(b)(1)(A). The Department of Defense Federal Acquisition Regulation Supplement (DFARS) 237.104(f)(i) provides that payment "to each expert or consultant for personal services under 5 U.S.C. 3109 shall not exceed the highest rate fixed by the Classification Act Schedules for grade GS-15." *See also Optimum Servs.*, 17-1 BCA ¶ 36,816 at 179,432.

We apply the DFARS rate and award expert fees as follows:

| Expert | Rate | Hours | Fees |
|---|---|---|---|
| J.F. Kiely Service Co. - Senior Consultant (2014) | $62.68 | 0.5 | $31.34 |
| J.F. Kiely Service Co. – Daniel Driscoll (2014) | $62.68 | 61 | $3,823.48 |
| J.F. Kiely Service Co. – Project Engineer (2014) | $57.00 | 5.5 | $313.50 |
| J.F. Kiely Service Co. – Daniel Driscoll (2015) | $63.31 | 88.75 | $5,618.76 |
| J.F. Kiely Service Co. – Other expenses | | | $1,920.58 |
| James McGovern (2014) | $62.68 | 5.2 | $325.94 |
| James McGovern (2015) | $63.31 | 68.8 | $4,355.73 |
| Doug Hibsham (2014) | $62.68 | 1.2 | $75.22 |
| Total | | | $16,464.55 |

Travel and Miscellaneous Costs

Lastly, ACN seeks to recover costs related to attorney travel required to litigate this appeal and miscellaneous costs for travel, copies, postage, deposition costs, exhibit preparation, and research charges (app. br. at 14-16). In total, ACN requests 21,571.91 in travel expenses and $13,169.21 in miscellaneous expenses (app. br. at 14-16, exs. 5-6). The government does not dispute the quantum of expenses sought by ACN, which is amply supported by invoices, and which appears to be reasonable. The Board grants ACN's request for travel and miscellaneous expenses of $34,741.12.

CONCLUSION

ACN has established that it is an eligible party entitled to fees under the EAJA. The government has not carried its burden to prove that its position in this appeal was substantially justified or that special circumstances exist precluding an award. ACN's application for fees and costs under the EAJA is granted. ACN is awarded fees and costs as follows:

| Category | Amount |
| --- | --- |
| Attorneys' fees | $187,300.00 |
| Paralegal and law clerk fees | $46,055.00 |
| Expert Fees & Related Costs | $16,464.55 |
| Attorney Travel Costs and Miscellaneous Attorney Expenses | $34,741.12 |
| TOTAL AWARD | $284,560.67 |

Dated: May 16, 2019

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

9

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals on an application for fees and other expenses incurred in connection with ASBCA No. 58623, Appeal of Asia Commerce Network, rendered in accordance with 5 U.S.C. § 504.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals