ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                           )
                                                      )
GLJ, Inc.                                             )      ASBCA No. 62964
                                                      )
Under Lease No. DACA45-5-16-00059        )

APPEARANCE FOR THE APPELLANT:            Gary L. James
                                          Secretary/Treasurer


APPEARANCES FOR THE GOVERNMENT:          Michael P. Goodman, Esq.
                                          Engineer Chief Trial Attorney
                                         Melissa M. Head, Esq.
                                          Engineer Trial Attorney
                                          U.S. Army Engineer District, Omaha

OPINION BY ADMINISTRATIVE JUDGE STINSON ON
APPELLANT'S MOTION FOR SUMMARY JUDGMENT

Appellant GLJ, Inc. (GLJ), appeals a contracting officer's denial of its May 8, 2021, claim, in the amount of $18,810, alleging damages to GLJ's property arising out of the subject land lease with the government (R4, tabs 004-005). We have jurisdiction pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109. GLJ submitted a motion for summary judgment,[1] and the government submitted a response in opposition. GLJ did not submit a reply brief. For the reasons stated below, the Board denies GLJ's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On September 20, 2016, appellant entered into Land Lease No. DACA45-5-16-00059 with the U.S. Army Engineer District, Omaha (R4, tab 001 at 000001). Pursuant to the agreement, GLJ agreed to lease to the government land located in the Cottonwood Hills Addition to LaGrange Township, Missouri Valley, Harrison County, Iowa (*id*.). The purpose of the lease was stated as "Monitoring Wells," which apparently included

---

[1] Appellant submitted two, one-page documents in support of its motion. The first, dated October 11, 2021, and entitled "MEMORANDUM IN SUPPORT OF (c) Summary Judgment Motion," set forth appellant's Statement of Undisputed Material Facts (app. mem.). The second, dated October 28, 2021, and entitled "Rule 56. Summary Judgment," set forth appellant's position regarding the government's submission of certain pleadings to the Board (app. mot.).

the "placement and maintenance of environmental monitoring wells" (R4, tabs 001 at 000001, 005 at 000013). Section 3 of the lease stated that the term commenced May 1, 2016, and ran through April 30, 2017, but was to remain in force thereafter from year to year, until April 30, 2021 (R4, tab 001 at 000001).[2] The yearly rent paid by the government to GLJ for the land lease was $3,120 (*id.*).

2. Section 8 of the lease, entitled "Alterations/Restoration," provided the government the right "to attach fixtures and erect structures or signs" on the leased property, which the government also had the right to remove (*id.* at 000002). Section 8 of the lease granted GLJ the right, prior to termination of the lease, to "require restoration of the leased premises" (*id.*). Upon such proper notice, "prior to the expiration or termination of [the] lease, or prior to relinquishment of possession, whichever first occurs," the government, "at its sole election," had the right to: "either (1) restore the premises to the same condition as that existing at the time of entering into lease or; (2) make appropriate settlement to the Lessor representing either the diminution in the fair market value of the property due to the failure to restore, or the actual cost of restoration, whichever is the lesser amount" (*id.*).

3. Section 8 of the lease also provided that the government:

> shall not restore the premises, either physically or by payment in lieu thereof, for damages as a result of reasonable and ordinary wear and tear, the elements or circumstances over which the **Government** has no control, or for alterations, or damage thereto, which the **Government** installed at its expense or the Lessor installed and was reimbursed by the **Government** through payment thereof . . . .

(*Id.*) (bold in original)

4. Section 9 of the lease, entitled "Damages," provided:

> The **Government** shall be liable only for damage resulting from negligence or misconduct of **Government** personnel or its agents, contractors, or assigns. The **Government** shall not be liable for any loss, destruction or damages to the premises beyond the control and without the fault of negligence of the **Government**, including, but not restricted to, acts of nature, fire, lighting [sic], floods, or severe weather. The parties

---

[2] The government appeal file (Rule 4 file) contains no documentation indicating why the lease term commenced on May 1, 2016, prior to the date the parties signed the lease (September 20, 2016).

2

> agree that any settlement of damages by the **Government**, if
> any, shall be done at termination of the lease.

(*Id.*) (bold in original)

5. Section 10 of the lease, entitled "Disputes," provided that the "lease is subject to the Contracts Disputes Act of 1978, as amended (41 U.S.C. § 7101 et. al.) and is governed according to federal law" (*id.*).

6. By letter dated March 18, 2021, addressed to Heidi Durako, Project Manager, Army Corps of Engineers, Omaha District, GLJ stated that "[a]ctions by the Government's employees or agents in the exercise of the Right-of-Entry have resulted in damage to the real property," and that "[t]he provisions of the contract dated April 6, 2017 allow the Owner to make a claim under applicable laws for any damages pursuant to Right-of-Entry" (R4, tab 002).[3] GLJ alleged a loss of $18,810, based upon a reduction in crop production for the years 2018-2020 (*id.*).

7. GLJ calculated its loss as follows:

> Prior to the contract the crop production was 175 bales per year with a value of $66 per bale. In the first year of the contract (2017), that year also had crop production of 176 bales. However thereafter crop production dropped to a mere 33 in the following years. . . . This shows an average loss per year of 143 bales valued at $9,460. However, we have determined that part of this loss was due to sales of some of the lots which accounts for 48 bales per year loss. (34.5 acres with avg 1.38 bales per acre)[.] Leaving the net loss of 95 bales each year at $66 each (2018, 2019, 2020) valued at $6,270 per year for total loss of $18,810 over the 3 years.

(*Id.*)

8. By letter dated April 16, 2021, Amanda M. Simpson, Acting Chief, Real Estate Division, Real Estate Contracting Officer, acknowledged receipt of appellant's March 18,

---

[3] The Rule 4 file contains no copy of a "contract dated April 6, 2017" (R4, tab 002). Because the record currently contains no other lease or contract, other than the one identified in SOF ¶ 1, we assume, for purposes of deciding appellant's motion, that this represents simply a mistake as to the date of the lease. However, to the extent appellant's March 18, 2021, letter is referencing a different document, the parties may add additional, relevant documents to the Rule 4 file, as litigation of this appeal proceeds.

2021, letter, and requested that appellant "provide proof of the damages, to include justification and verification such as pictures and/or receipts, etc[.] to prove your losses" (R4, tab 003).

9.  By letter dated May 8, 2021, GLJ responded to Ms. Simpson's April 16, 2021, letter, providing photographs of appellant's land and a spreadsheet in support of its claimed damages (R4, tabs 004, 007).  Appellant stated:

> In addressing the damages to the hay ground, the equipment used for harvesting hay and the position of the wells are incompatible.  Laying down hay in the widest possible swath speeds drying, improves quality and saves money on harvest.  It is impossible to cut close to the stakes around the wells on the many lots.  Harvest of this crop requires 3-4 cuttings per year with crop losses from cutting around each well resulting in the production numbers decreasing.  In addition, the equipment tracks from the contractor are digging deep ruts which also hinder the harvest.  Wide cutting swaths are the single most important factor in maximizing drying rate and preserving the quality of the hay.

(R4, tab 004)

10.  By letter dated June 14, 2021, Ms. Simpson issued a final decision denying GLJ's claim (R4, tab 005).  Ms. Simpson stated, in part:

> We have reviewed your claim and find that the wells were installed in the locations shown on the exhibit attached to the lease and that the Government's operations and activities were consistent with the normal operations approved by the lease.
>
> Condition 9 of the Army Lease sets forth the standard for establishing damages under the lease.  That condition specifically states the 'The Government shall be liable only for damage resulting from negligence or misconduct of Government personnel or its agents, contractors, or assigns.'  You have not alleged nor provided any evidence of Government negligence or misconduct so your claim is hereby denied.

(*Id.*)

4

11. On June 25, 2021, GLJ submitted to the Board a notice of appeal. On July 6, 2021, the Board issued a Notice of Docketing, designating the appeal as ASBCA No. 62964.

DECISION

GLJ, proceeding *pro se*, seeks compensation for a reduction in crop production allegedly caused by actions of the government arising out of the lease. In its motion, GLJ cites Section 9 of the lease, which provides "the Government shall be liable for damages resulting from negligence or misconduct of Government personnel or its agents, contractors, or assigns" (app. mem. at 1). Appellant's two, one-page, summary judgment submissions, however, offer no factual discussion detailing the government's alleged negligence or misconduct during the lease period, or any legal argument establishing that GLJ is entitled to judgment as a matter of law. Instead, GLJ makes the following request: "[w]e ask for a review by the Board, of the dates and times The Corp [sic] of Engineers and their contractor's presence on the properties that would shed light on the causes of the damages claimed. The Corp [sic] of Engineers should be able to provide such information for the 5-year period of the lease" (*id.*).

The government responds, stating that there exists a "dispute over the material facts as to whether any crop losses actually occurred, let alone if those crop losses were caused by the actions of the Government, its employees, or its contractor or agent" (gov't opp'n at 4). In support, the government notes that GLJ "essentially admits that it does not know what the actual facts are related to the installation and operation of the monitoring well," that appellant "does not know what actions may have been taken by Government employees, contractor employees, or agents, or whether those actions caused damage to its property," and that GLJ "has not provided any proof of alleged damages" (gov't opp'n at 4-5). The government concludes that material facts "preclude the grant of summary judgment" (gov't opp'n at 5).

As the party asserting the claim, GLJ has the burden of proof. *Korea Eng'g Consultants Corp.*, ASBCA No. 61724, 20-1 BCA ¶ 37,538 at 182,285 (citations omitted). Specifically, GLJ "has the burden of proving the fundamental facts of liability and damages de novo." *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (en banc)). GLJ must establish three necessary elements, "liability, causation, and resultant injury." *Servidone Constr. Corp. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991).

As the party requesting summary judgment, GLJ also "bears the burden of establishing the absence of any genuine issue of material fact . . . ." *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Board Rule 7(c), which sets forth the procedures for filing a motion for summary judgment in this administrative body, requires a party to "explicitly state and support by specific evidence all facts and legal

5

arguments necessary to sustain a party's position" and that "[e]ach party should cite to the record and attach any additional evidence upon which it relies . . . ." Board Rule 7(c)(2). Appellant's summary judgment submissions fail to meet the requirements of our rules. Indeed, appellant essentially seeks to place upon the government, and the Board, the burden of establishing GLJ's entitlement to damages, requesting "a review by the Board, of the dates and times The Corp [sic] of Engineers and their contractor's presence on the properties that would shed light on the causes of the damages claimed," and stating that the "[t]he Corp [sic] of Engineers should be able to provide such information for the 5-year period of the lease" (app. mem. at 1).

We are mindful of "the long-held principle that pleadings drafted by *pro se* litigants are generally held to 'less stringent standards' than pleadings filed by trained attorneys." *Steffen v. United States*, 995 F.3d 1377, 1380 (Fed. Cir. 2021) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Although the Board accords *pro se* litigants leeway administratively, we still must apply the same legal standards to all parties. *Atlantic Maint. Co.*, ASBCA No. 40454, 96-2 BCA ¶ 28,472 at 142,195.

Here, GLJ's summary judgment filings allege, but fail to establish, entitlement to its claim as a matter of law, or the absence of disputed material facts, including whether government action caused the damages alleged. The current record is simply inadequate to sustain a finding that actions by the government caused a reduction in GLJ's crop production.[4] Accordingly, we hold that appellant, who has the burden of proof, has failed to demonstrate the absence of any genuine issue of fact and failed to establish entitlement to summary judgment as a matter of law. *First Commerce Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003) ("Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"); *Ballistic Recovery Systems, Inc.*, ASBCA No. 61333, 19-1 BCA ¶ 37,223 at 181,202 ("A grant of summary judgment is appropriate when a review of the record demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law") (citations omitted).

GLJ identifies several instances where the Board directed the government to file certain pleadings in this appeal, including the government's answer to appellant's complaint, the Rule 4 file, and a response to appellant's motion for summary judgment (app. mot. at 1). Appellant requests that we "order the USACE to pay the reasonable expenses, including attorneys incurred as a result" (*id.*). However, none of the alleged failures of the government to timely file certain pleadings, as identified by appellant,

---

[4] We have reviewed the documents contained in the Rule 4 file, and have found no documents that establish GLJ's entitlement, as a matter of law, to the damages it seeks. Of course, appellant filed its motion for summary prior to the conducting of discovery in this appeal. Presumably, the Rule 4 file will be supplemented with additional documents produced once discovery is complete.

establish GLJ's entitlement to payment of "reasonable expenses," nor do they present a proper basis upon which to grant appellant's motion for summary judgment. Indeed, we note that the government has complied with the Board's orders, and filed the pleadings as directed. Moreover, a request for attorney's fees at this stage in the proceedings is premature and not properly before the Board, as such requests are allowed pursuant to the Equal Access to Justice Act, 5. U.S.C. § 504.[5] *Maintenance Engineers*, *Inc.*, ASBCA No. 34431, 87-2 BCA ¶ 19,915; *J.M.T. Machine Co.*, ASBCA No. 23928, *et al.*, 86-2 BCA ¶ 18,928, *aff'd*, 826 F.2d 1042 (Fed. Cir. 1987).

## CONCLUSION

For the reasons stated above, appellant's motion for summary judgment is denied.

Dated: April 21, 2022

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[5] The Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a)(2), provides, in pertinent part, that "[a] party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award under this section . . . ." If GLJ subsequently qualifies as a prevailing party otherwise eligible under EAJA, it may file a proper application.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62964, Appeal of GLJ, Inc., rendered in conformance with the Board's Charter.

Dated: April 21, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals